HAIGHT (BLISS v.). See Case No. 1,548.

HAIGHT (DEXTER v.). See Case No. 3,861.

## Case No. 5,902.

### HAIGHT et al. v. MORRIS AQUEDUCT.

[4 Wash. C. C. 601.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1826.

EQUITY—ANSWER OF CORPORATION—COMMON SEAL—AFFIDAVIT IN CHANCERY—ADVERSE POSSESSION—WATER RIGHTS—ACQUIESCENCE.

1. The answer in chancery of a corporate body, under its common seal, denying the equity of the bill, is sufficient to warrant a denial of an injunction, or to dissolve it if granted.
[Cited in Baltimore & O. R. Co. v. City of Wheeling, 13 Grat. 62.]

2. An affidavit in chancery, not sworn to before a judge of this court, or a commissioner appointed to administer an oath, cannot be read in evidence.
[Cited in Carpenter v. Providence Washington Ins. Co., 4 How. (45 U. S.) 219.]

3. The defendants having had the adverse possession for twenty years, of certain water which had previously flowed into the plaintiffs' mill pond, which they had used during that period by means of an aqueduct for supplying water to a certain town, suffered it to go into disuse, in consequence of a decay of the logs of this aqueduct, for three years; during which, the water again flowed into the plaintiffs' pond. Upon the defendants commencing the reconstruction of the aqueduct, the plaintiffs applied for an injunction; the same was refused by the court, twenty years possession having vested a complete title to the water in the defendants; which was not impaired by the three years reflow of the water into the plaintiffs' pond, it appearing that the right of the defendants was not intended to be abandoned.
[Cited in Bonaparte v. Camden & A. R. Co., Case No. 1,617.]
[Cited in Scudder v. Trenton Del. Falls Co., 1 N. J. Eq. 703, 716; Dexter v. Tree, 117 Ill. 533, 6 N. E. 506.]

4. Acquiescence, even by the plaintiff, or by those under whom he claims, for a shorter period than twenty years, would be sufficient to induce a refusal of the injunction.
[Cited in Sheldon v. Rockwell, 9 Wis. 163; Arbuckle v. Ward, 29 Vt. 51.]

The bill states the plaintiffs [Benjamin and Halsted Haight] to have been since the 10th

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

of April 1821. owners of a grist mill, situated on a branch of the Speedwell river, in Morris county, New Jersey, which, with the pond, the waters flowing into it, and all other appurtenances, they purchased on that day, at a sale thereof made by the administrator of Ural Tuttle, under an order of the orphan's court, and received a regular conveyance therefor. That they took possession of the said mill with all its appurtenances at the time of purchase, and have been ever since in the quiet and uninterrupted possession of the said property. That this mill and mill seat have been the site of a mill, and used as such by those under whom the plaintiffs claim, for seventy years. That it has always been, and still is dependent for a sufficient supply of water on a branch of the Speedwell, which is formed by a junction of two smaller streams above the mill, which, by its natural course, empties into the plaintiffs' said mill pond; the largest of which two smaller streams has its source in a group of natural springs, which rise near each other, in a tract of land belonging to one James Wood, about a mile and a quarter above the mill. That the said stream is essential to the value and enjoyment of the mill, by the supply of water which it affords to the pond. The bill then charges that there exists in the said county of Morris an incorporated company, called the "Proprietors of the Morris Aqueduct," which was created by an act of the legislature of New Jersey, the seat of whose operations is at Morristown. That the officers of this company have threatened, and are now actually preparing to take the waters that rise from the aforesaid group of springs, and which now naturally flow into the plaintiffs' pond, and to divert them by pipes or aqueducts, from their natural course, to Morristown, for the purpose of supplying its inhabitants with water. The prayer of the bill is for an injunction. The answer admits the antiquity of the mill, mill-seat, and appurtenances, the waters which supplied the pond, and the plaintiffs' purchase, and three years possession thereof as set forth in the bill; alleges that one of the smaller streams mentioned in the bill is fed by upwards of twenty permanent springs. and the other by about fifteen. But it denies that when the plaintiffs purchased the mill, all the waters which fed those streams flowed into the pond of said mill; that on the contrary, a portion thereof which would naturally have so flowed, was then diverted therefrom, and had been so for more than twenty years by the defendants, through their aqueduct to Morristown, to supply the inhabitants with water. The answer then alleges that, in April, 1799, certain of the inhabitants of Morristown formed an association for the purpose of supplying the town with water by means of an aqueduct, and that they immediately proceeded at a considerable expense to construct the aqueduct with wooden pipes, from a group of

springs issuing near to each other on lands belonging to James Wood and others, which before that time constituted a small portion of the water which formed one of the branches of the stream flowing into the said mill-pond; which waters were by means of the said aqueduct conducted as early as the 1st of November, 1799, to various parts of the said town, and were thereby entirely directed from their natural course to the said mill-pond. That the work being thus completed, the members of the said association applied for, and obtained from the legislature of New Jersey, in November, 1799, an act of incorporation, investing them with the usual corporate powers, and authorising the said corporation to lay and extend the said aqueduct to such places, and through any lands that might by them be thought necessary, and to continue the same where then laid. That some time in the year 1801, one Schense, then the owner of two thirds of the said mill, rented of the defendants a share of the said aqueduct water, and continued to hold the same, and to pay an annual sum for the use of the water, for some years—that he sold his interest in the mill and appurtenances to one Vaide. who bought in the other one third, and then sold the whole of the property to the said Ural Tuttle mentioned in the bill. That during the whole period from November, 1799 to the year 1822, the defendants held the full, quiet, and adverse possession and enjoyment of the waters from the springs which supplied their aqueduct, and diverted them away from the said mill by means of their said aqueduct, during all which time, the said mill was in full operation, and did a full and profitable business. That some time in the year 1821, the logs of the aqueduct became decayed and leaky, and the defendants, being embarrassed by debts due by the corporation, they were at that time unable to make the necessary repairs, so that the aqueduct went into partial disuse in the year 1821, and was entirely disused during the succeeding year, in consequence of which, the waters of the said springs were suffered to flow again in their natural course to the plaintiffs' mill pond. But the defendants deny that they ever intended to abandon the right to the use of the waters so long enjoyed by them, or any of their corporate privileges, but purposed, when in their power, to relay the pipes, and to restore the aqueduct to its accustomed operation and use. They admit that about June, 1825, they commenced their preparations for reconstructing the aqueduct, and again conducting the waters before used and possessed by them to Morristown, and that they have in part relaid the said aqueduct at a considerable expense, and would have had it completed by this time, but for the present proceedings—that they contemplate using only two of the springs of the group formerly used by them, and have not threatened to use more, which are considerably less in quantity

than they had been accustomed to take from the year 1799 to 1821, during the whole of which period, the want of the water so diverted by the aqueduct produced no sensible effect whatever on the work or value of the mill, and that the difference would not amount to the grinding of ten barrels of flour a year.

The plaintiffs now moved the court for an injunction; and the defendants offered to read sundry affidavits to support their answer, which were objected to on the ground that they were sworn to before a state master in chancery, and not before any person authorised by an act of congress to administer oaths. In support of this motion, it was contended, that the long and uninterrupted use of the waters of these springs, which in their natural course had flowed into the plaintiffs' mill-pond, has vested in them a right thereto, which can be opposed only by a grant or long possession. That the defendants cannot set up a right by grant, in virtue of the charter of incorporation, because it makes no provision whatever for compensation to the owners of the mill for the loss of the water which the aqueduct might divert from it, without which no vald grant of it could be made; it being against every principle of natural justice, that private property should be taken for public use without a just compensation being made. That the answer being taken not upon oath, but under the common seal of the corporation, the facts stated in it cannot be regarded in this stage of the cause, and of .course, no title in defendants by a long adverse possession is shown; neither can the affidavits to support the answer be regarded, as they are sworn to before a master of the chancery court of this state, who has no authority by the laws of the United States to administer oaths. The plaintiffs show an uninterrupted use of these waters for three years last past, which is sufficient to entitle them to apply for an injunction to restrain the defendants from diverting these waters from their mill. Cases cited: 2 Desaus. Eq. 616; 18 Ves. 515; 9 Johns. 507; 14 Ves. 130; 2 Johns. 162, 463, 472; 3 Johns. C. C. 287; 2 Ves. Sr. 414; Cox, Cr. Cas. 101, 102; 6 Johns. C. C. 19, 46; Johns. C. C. 101. On the other side it was insisted that, upon a motion for an injunction, the answer of a corporation, under its common seal, denying the equity of the bill, is sufficient to prevent the order for the injunction. as the corporation can answer in no other way. That the answer disclosed a case which must exclude the plaintiffs from the equitable interposition of the court. It shows that the plaintiffs have no legal right to this easement; the same being completely vested in the defendants by twenty years quiet, adverse possession, which can only be divested by a similar possession in the plaintiffs; whereas, if they have any possession. it does not exceed three years. That independent of this fatal objection, the long acquiescence of those under whom plaintiffs claim is sufficient to shut them out of this court. That the use of those waters by the defendants, having been granted to them by an act of the legislature, the exercise of the right cannot be treated as a private nuisance. Lastly, that it appears by the answer, that this is not one of those cases of irreparable injury which recommends itself to the favour of a court of equity. Cases cited: 1 Phil. Ev. 120, 123; 6 East, 208; 2 Sandf. 175, notes; 18 Ves. 515; 2 Eq. Cas. Abr. 522, pl. 3; Eden, Inj. 167, 168; 2 Atk. 483, 391; 2 Vern. 646; 3 Mass. 136; 4 Burrows, 2400; Coop. Eq. Pl. 154; 1 Root, 535; Ang. Water Courses, 43, 44, 49, 69.

Hornblower & Vanarsdale, for plaintiffs.
Freylinghuisen & Stockton, for defendants.

WASHINGTON, Circuit Justice. It must be admitted that the bill, taken by itself, makes out a case which would warrant this court in granting the equitable relief which it seeks. It states a title in the plaintiffs to an ancient mill, together with the pond and waters flowing into it, and a long, uninterrupted possession of the said mill and waters by those under whom the plaintiffs claim. The complaint is, that the defendants have threatened, and, at the time the bill was filed, were preparing, to divert the waters of certain springs which flowed into the said mill-pond from their natural course; which waters, it alleges, are essential to the value and enjoyment of this property. To such a case, the many authorities relied on by the plaintiffs' counsel strongly apply; and if it stood uncontradicted, the court could not refuse to grant the injunction prayed for. The only question upon this motion, is, whether the court can regard the statement made by the answer, so far as it contradicts the allegations of the bill; the answer being put in, not upon oath, but under the common seal of the corporation? The question is not whether the answer of an aggregate corporation, under its common seal, would avail the defendants at the hearing, in like manner as the answer of an individual under oath would; but whether such an answer, when it denies the equity of the bill, is not sufficient to prevent the granting of an injunction, and even to dissolve it after it has been granted? No cases upon this point were cited on either side, nor are any recollected by the court. But I am strongly of opinion, upon principle, that such an answer is sufficient to produce either of the consequences which have been mentioned. The corporate body is called upon, and is compellable, to answer all the allegations of the bill, but can do so under no higher sanction than its common seal. A peer of the realm, in England, answers upon his honour, the oath being dispensed with. In like manner the plaintiff may, in ordinary cases, dispense with the oath to an answer; and, if

he do so, the court will order the answer to be taken without oath. Now if, in these cases, the answer, denying the equity of the bill, cannot avail the defendant as an answer under oath would do, to prevent the granting of an injunction, or to dissolve it when granted, the legal impossibility to take an oath in the first case, the privilege of the peer in the second, and the dispensation extended to the defendant in the last, would place each of those defendants in a situation infinitely more disadvantageous than that of other defendants, whose answers cannot be received otherwise than upon oath. Such then cannot be the practice of a court of equity. I shall now proceed to consider the case which the answer presents, disregarding altogether the affidavits taken to support it; as they were taken, not before one of the judges of this court, or one of the commissioners appointed by this court to take affidavits, but by a person unauthorized by any act of congress to perform this duty.

The material facts stated in the answer are: (1) That in November, 1799, the defendants were by law constituted a body corporate, with power to construct an aqueduct to convey water into Morristown for the use of its inhabitants; and that in that month and year the aqueduct was so far completed as to divert the waters of the springs referred to in the bill from their natural and accustomed course to the mill now owned by the plaintiffs, and to conduct them into Morristown. (2) That the water of those springs, which thus supplied the aqueduct, continued to flow therein, and thus to be withdrawn from its natural course to the mill from November, 1799, to the year 1821 or 1822. (3) That, by the decay of the pipes, the aqueduct became useless, and ceased in the year 1822 to conduct the water of those springs; the consequence of which was, that it returned to its natural course, and again flowed into the stream that supplied the mill pond. (4) That the defendants never, for an instant, abandoned, or intended to abandon, the use of the waters of those springs for their aqueduct; but after an interval of about three years, when they recovered the ability to commence their operations, they made preparation to reconduct the aqueduct, and actually laid down pipes in the same direction as formerly, to receive and conduct the water to Morristown. (5) That at the time when the plaintiffs purchased this mill, the contested water had been in the quiet, undisputed, and adverse possession and enjoyment of the defendants for upwards of twenty years. (6) That such use and possession by the defendants had, during all that time, been acquiesced in by those under whom the plaintiffs derived title to this mill, not only silently, but, as to one of the proprietors, by acts of an unequivocal character. Lastly. That during all this long possession and diversion of the waters of these springs by the defendants, no perceptible injury was experienced by this mill, and that in truth the injury now anticipated by the plaintiffs will be trifling.

Taking these facts for the present to be true, they do, in the opinion of the court, deprive the plaintiffs of all ground of equity to ask its aid to restrain the defendants from renewing their aqueduct. The objection which meets us in limine is, that the plaintiffs never did acquire a right to the easement to which they now assert a claim, without which they could not recover damages at law for the alleged nuisance, and consequently they can have no pretence for asking the interposition of a court of equity. If the plaintiff's title be apparently good, the court will, in general, send the plaintiff to law to establish his title there; and will grant an injunction in the mean time. But if by the plaintiff's own showing, or by the answer, the plaintiff appears to have no title at all, a court of equity will not do a vain thing, by requiring him to establish it at law; and much less will that court grant an injunction in the mean time. Now it appears by this answer, that in the year 1821, when the plaintiffs purchased this mill with its appurtenances, the water of the springs which supplied the plaintiffs' aqueduct had been for more than twenty years in the quiet, undisturbed, and adverse possession and enjoyment of the defendants, with the knowledge and the tacit, if not the express, acquiescence of the legal proprietors of the mill, with all the easements and appurtenances belonging to it. This length of possession affords, at law, a conclusive presumption of right in the person who has enjoyed it, insomuch that the court would be bound to direct the jury to presume a grant. It affords a complete bar to an action on the case against the party who has, for so long a time, used and enjoyed the easement. Even a possession short of twenty years may afford such a presumption, according as it may be attended by circumstances to support the right. The cases upon this subject at law and in equity are both numerous and uniform. Bealey v. Shaw, 6 East, 208, is conclusive. If then the right of Tuttle to the water of these springs, so far as they had been used and diverted from his mill by the defendants, was divested out of him and vested in the defendants by virtue of this long and uninterrupted possession and enjoyment; his administrator had no power to grant them as an easement or appurtenance to the mill sold and conveyed by him to the plaintiffs.

But it was contended by the counsel for the plaintiffs, that they had regained and retained the possession of this water for the last three years, which they insist is sufficient to warrant the interposition of this court; and they cited a number of cases to support, as they supposed, this proposition. It will be seen at once by an examination of those cases, that they are confined to a possession of the easement which is opposed by

no superior adverse possession in another. If, for example, the defendants were now, for the first time, about to disturb the plaintiffs' right to the flow of those waters to his mill; the court, which requires of the plaintiff seeking the injunction to show, not only a title to those waters, but a possession of them, would be satisfied if that possession should extend to the term of three years. But when the defendant sets up a superior right to the easement, by showing an undisturbed adverse possession and enjoyment of it for twenty years, it would be very extraordinary if a subsequent possession for only three years should be sufficient to defeat such better right, either at law or in equity. It may indeed be well made a question, whether the plaintiffs have ever, for a moment, had an adverse quiet possession of this water, since it is plain that the flow of it, in its natural course to the mill, was suffered, not under an intention to abandon the use and possession of it, but from the necessity of the case, arising from the decay of the old pipes, and the difficulties which were in the way of the defendants in replacing them with new. But be this as it may, there is nothing more clear than that a mere non-user of the water for a period short of that which would create a presumption of title, will not avail the plaintiffs, either at law or in equity. The next objection to the interference of this court, which I consider to be insuperable, is, the acquiescence of those under whom the plaintiffs claim in the construction of this aqueduct originally; and in their subsequent use and enjoyment of the water by which it was supplied: which circumstance, though unaccompanied by long possession, would be sufficient to close the doors of a court of equity against this application. In such a case, that court will not only refuse to interpose in favour of the party who has thus acquiesced, or been guilty of inexcusable negligence, but will even grant injunctions, to restrain actions brought at law for the nuisance. In the case of Birmingham Canal Co. v. Lloyd, 18 Ves. 515, the court refused an injunction after an acquiescence of only two years. Now, in this case, the owners of this mill stood by and suffered the defendants to apply for, and obtain an act of incorporation without objection, as far as appears; and, at a great expense, to construct this aqueduct, and to use the water which supplied it: and now, when an attempt is making by the defendants, not to cut a new aqueduct, or to divert from the plaintiffs' mill water which had not for upwards of twenty years been used, and enjoyed by the defendants, but to repair the old aqueduct, by laying down new pipes for again conducting the water which supplies that aqueduct to Morristown; this application is made to arrest their proceedings. Were it to prevail, the court would, in my humble judgment, give its countenance to something very much like a fraud; for I cannot distinguish this case from that, where the owner of land stands by and sees another innocently expending his money by making improvements on that which the other side believes to be his own, and is silent as to his title; or where a mortgagee sees another advance his money on the same security, and fraudulently conceals his prior incumbrance; in which case equity will postpone him in favour of the second mortgagee.

There are other objections raised to the relief asked for by this bill, which would deserve much consideration, if the case stood in need of it. It might, in the first place, be a subject of serious inquiry whether the exercise of the right, or privilege, granted to the defendants by an act of the legislature of this state, can be treated by courts of justice as a private nuisance, although it should operate injuriously to the rights of the plaintiff, provided he had any, in the subject of this controversy. The omission to provide a compensation for injuries which might result from the grant, would, in all cases, mark the act with manifest injustice towards the party aggrieved; but if such a provision be not required by the constitution of the state, which it is not in this, it may admit of a very serious doubt, whether a remedy can be afforded by judicial interposition. I wish it, nevertheless, to be understood, that I mean to give no opinion upon this point; and I have noticed it chiefly because it was one which engaged much of the attention of the counsel on both sides. It may well be doubted, in the next place, whether this is one of those cases of irreparable mischief, in which the court will exercise the extraordinary power which this bill prays for. That no injury was sustained by this mill during the space of twenty years, on account of the loss of the water which then supplied the aqueduct, may fairly be presumed from the acquiescence of the former proprietors of the mill, without the aid of positive evidence, and the answer states, that the defendants contemplate using, in future, a smaller portion of water than they did formerly. It further alleges, that the anticipated injury which forms the grounds of the present complaint, will be of the most trifling nature. On the other hand, the effect of the injunction would be in the highest degree mischievous to the defendants. In such a case a court of equity, it would seem, ought not to interfere, but leave the plaintiffs to their remedy at law, if they have any. Injunction denied.