## J. & W. B. HOGAN, et al. v. THE BRANCH BANK AT DECATUR.

1. Where an answer in chancery is verified by the respondent upon oath, administered by a notary public, as shown by his notarial certificate, and is received without exception in the primary court, an objection to the competency of a notary to administer an oath in such case, will not be entertained on appeal.

2. The answer of a corporation, under its seal, is something more than pleading, and where it negatives the bill, warrants the dissolution of an injunction. [COLLIER, C. J., dissenting, was inclined to think that an attestation under the common seal was essential to the authenticity of the answer, where a discovery was not specially sought from the officers, agents, &c., of the corporation; but when an answer is thus authenticated, the

President, &c. may verify it by his own oath, and then if responsive it will be entitled to the force of evidence.

3. Where the allegations of the bill are made upon information and belief, an injunction granted thereon will be dissolved, if they are denied by the answer in the same manner; especially if it does not appear that the complainant enjoyed superior means of acquiring information.

Appeal from the Court of Chancery sitting in Morgan county.

THE plaintiffs in error filed their bill, setting forth that the Messrs. Hogan, as principals, and S. Meredith and T. Skidmore, as their sureties, on the 28th May, 1841, made and negitiated their promissory note to the defendant, for the sum of $7,000; which has been reduced by payments to $4,050. For this balance, a suit is pending in favor of the defendant, in the circuit court of Morgan.

Complainants alledge, that this latter sum has been extinguished in equity, by the following transactions, viz: On the 28th August, 1838, A. S. Christian leased to James H. Bradfute by the the description of James H. Bradfute & Co., about sixty acres of land, (particularly described,) lying near Tuscumbia, at four dollars *per acre* for four years, commencing on the first day of January, 1838, and ending with 1841; Bradfute & Co. were, if they thought proper, to renew the lease, for the term of five years after its determination.

It was understood by the lessor and lessees, that the latter should keep a race track on the land during the term—erect temporary stages, booths, and such other improvements as are usual at such places. If the lease shall not be renewed, or the track continue to be kept open after its expiration, then the lessor shall pay what may be the value of the lumber—to be estimated by disinterested men. But if the truck shall be continued, then the lessor shall pay what may be the value of the improvements, to be used as originally intended—to be ascertained in the same manner.

In the early part of the leasehold term, the lessor gave a lien to the defendant on the premises, to secure the payment

of pre-existing debts. During the continuance of the lease, a sale of the premises was made under the lien, and the defendant became the purchaser. It was agreed between the defendant, that the latter should stand in said Christian's shoes, or in other words, that the Branch Bank was to have the benefit, and bear the burdens of said agreement. Under this agreement, the defendant has received the rents of Bradfute & Co.

Under the lease, Bradfute & Co. erected extensive improvements on the land; kept the race track open during the continuance of the lease. And it has been since kept open by the defendant or its agents.

On the 11th April, 1840, James H. Bradfute made a deed of trust, by which he conveyed to E. D. Towns, with other property, all his right and interest in the leased premises, with the profits and privileges appertaining thereto, in trust, to secure the payment of certain debts due the Messrs. Hogan, individually and as partners. Default being made in the payment of the debts provided for, a sale was duly made under this deed by the trustee; at which the Messrs Hogan became the purchasers of the premises, for the sum of five hundred dollars.

It is alledged that the defendant upon the expiration of the lease, had taken possession of the land, and leased the premises as a public race track. Shortly thereafter, the Messrs. Hogan informed the defendant, that they desired the improvements to be valued, as contemplated by the lease, and desired that it should appoint some one or more persons for that purpose. The Messrs. Hagan proposed the names of three disinterested persons, and that they should make the valuation on the race track, on the 27th August, 1842. The defendant was accordingly notified, unless it co-operated, the individuals designated, or others, would on the day named proceed to make the valuation. The improvements were valued at $4,000, and the defendant had notice; but has failed and refused to pay the same, or otherwise account for it to the defendant or Christian.

The bill alledges, that Christian has been discharged as a bankrupt, by the district court of the United States, for the

northern district of Alabama, so that the Messrs Hogan can-
not enforce their claim against him.

Thereupon the complainants offering to pay whatever bal-
ance may be due to the defendant, pray that an account may
be taken of the value of the improvements, and that to that
extent, the defendant be enjoined, &c., &c. ; and such other
relief as may be equitable be granted.

The defendant answered the bill, denying that it made any
agreement with Christian, or the Messrs. Hogan, as alledged
therein, or that it is under an obligation of any description,
to pay for the improvements made upon the race track.

It is admitted that Christian made a deed of trust for the
benefit of the defendant, on the 12th Sept. 1838, for the tract
of land of which the leased premises are a part.  That this
land and other property embraced, were sold pursuant to its
provisions, on the 24th October, 1840, at which sale the de-
fendant became the purchaser.

Defendant affirms that Bradfute & Co. enjoyed their lease
until its expiration, and never applied to renew the same.
Denies that it ever received any portion of the rents which
the lessee stipulated to pay ; but these were transferred to
other creditors of the lessor, and are understood not to have
been paid off and discharged.

The leased premises have never been occupied as a race
track by the defendant's permission, since its right to the pos-
session accrued ; insists that the valuation of the improve-
ments were made under an erroneous impression, and the
value assessed was most unreasonable and unjust, not obliga-
tory upon the defendant, and consequently it has not paid it.

The answer was subscribed by the president of the bank,
and the seal of the corporation affixed : it was also verified
by the oath of the president taken before a notary public, and
attested by his notarial seal.   Upon the coming in of the an-
swer, the defendant prayed that the injunction might be dis-
solved, and a motion to this effect was accordingly submitted
in vacation.   The chancellor was of opinion that the equity
of the bill had been fully denied, and ordered that the injunc-
tion stand dissolved, the bill be retained as an original, and
that the usual refunding bond be executed.

S. Parsons, for the plaintiffs in error, insisted—that the agreement between defendant and Christian, made the former liable to pay to the Messrs. Hogan the value of the improvements, and that they might well make it a set-off *in equity*, in aid of their sureties. [3 Ves. jr. Rep. 248 ; 11 Id. 24 ; 12 Id. 346 ; 18 Id. 233 ; 6 J. J. Marsh. Rep. 502 ; 6 Paige's Rep. 56 to 60 ; 7 Porter's Rep. 549 ; 4 Ala. Rep. 721.] *Further*, a notary public has no authority to administer an oath, consequently the verification of the answer in the present case, can impart no additional force to it ; and if it does, the president of the bank does not profess to have a personal knowledge of the facts which the answer sets forth.

D. C. Humphreys, for the defendant in error, insisted that the equity of the bill, if it really had any, was entirely denied by the answer. That the answer was responsive, and regularly verified by an oath administered before a notary ; but if a notary was not authorised to administer an oath in such case, then it was insisted, that the answer was sufficient— being under the corporate seal. [7 Ala. Rep. 539 ; Story's Eq. Plead. 671.]

COLLIER, C. J.—We will not stop to inquire whether a notary public is authorized to administer an oath where it is necessary thus to verify a paper which is to be made part of the proceedings in a cause. It may however be remarked that we have a statute which authorises a notary to administer oaths and affirmations according to law, in all matters belonging or incident to their notarial office ; to receive proof of all instruments of writing relating to commerce, or navigation, and such other writings as are commonly proved or acknowledged before notaries within the United States. [Kirksey v. Bates, 7 Porter's Rep. 529.] No objection was taken to the bill for the want of verification, and as it appeared from the attestation of the notary that it had been sworn to, the complainant must be held to have waived any objection on this ground. Our practice requires that such matters should be excepted to in the primary court, and cannot be raised for the first time on appeal.

The answer of the defendant would doubtless have been regular, if it had merely been attested by its corporate seal, but its effect as evidence would, according to some of the decisions, have been less potent.   In Haight v. The Proprietors of the Morris Aqueduct, [4 Wash. C. C. Rep. 601,] the question was, whether such an answer, when it denies the equity of the bill, is not sufficient to prevent the granting of an injunction, or to dissolve one already granted.   No authorities were cited, yet Mr. Justice Washington was "strongly of opinion upon principle, that such an answer is sufficient to produce either of the consequences which have been mentioned.   The corporate body is called upon, and is compellable to answer all the allegations of the bill, but can do so under no higher sanction than its common seal."   He adds, that if the answer of a corporation denying the equity of the bill, cannot avail the defendant as an answer under oath would, to dissolve an injunction, then the dispensation extended to a corporation would make its situation more disadvantageous than that of other defendants, whose answers cannot be received otherwise than upon oath.

In the Fulton Bank v. New-York and Sharon Canal Co., et al., 1 Paige's Rep. 311, it was decided that an injunction against a corporation cannot be dissolved on bill and answer, unless the answer is duly verified by the oath of some of the individual members who are acquainted with the facts stated therein, corporations answering under their common seal without oath, it was said were " at liberty to deny every thing contained in the bill, whether true or false.   Neither can any discovery be compelled, except through the medium of their agents and officers, and making them parties, defendants. But no dissolution of the injunction ca n be obtained upon the answer of a corporation which is not duly verified by the oath of some officer of the corporation, or other person who is acquainted with the facts therein.   There can be no hardship in this rule as applied to corporations, as it only puts them in the same situation with other parties."   The chancellor further said, "if the agents of the institution under whose direction the answer is put in, are acquainted with the facts, so as to justify a positive denial in the answer, they can verify its truth by a positive affidavit ; and if none of the officers

are acquainted with the facts, their information and belief can have no greater effect than that of ordinary defendants, however positive the answer in the denial may be." To the same effect is 6 Paige's Rep. 311. And it is intimated in no dubious terms by the supreme court of the United States, that the case cited from 4 Washington cannot be supported. [5 Peters' Rep. 111.]

My brethren are of opinion that the answer of a corporation under its seal, is something more than pleading, and where it negatives the bill, warrants the dissolution of an injunction. I prefer to adopt the reasoning of the court in 7 Paige, and the *dictum* in 5 Peters. My researches furnish no case in which the answer of a corporation has been received, without the attestation of its common seal, and this I incline to think is necessary to its authenticity, where a discovery is not specially sought from its officers, agents, &c. But when an answer is thus authenticated, I can discover no objection to permitting the president, &c. to verify it by his own oath ; and when this is done, but not otherwise, accord to it the force of evidence.

According to the views both of my brethren and myself, the answer is made in such form as warrants a dissolution of the injunction, if it is sufficiently responsive to the bill ; and to this question we now address ourselves. There can be no question but the answer denies every allegation of the bill, of which any equity may be predicated. The bill makes its statements in positive terms, and the answer is equally explicit ; but the oath of the party verifying affirms it to be true according to his " *best information and belief.*" Neither of the complainsnts profess to have been present when the transactions took place between Christian and the defendant, and the reasonable inference is that they were not ; but alledge them from information and belief. This conclusion is strengthened by the remark that if the defendant's undertaking to stand " in the shoes of Christian," " was not made by the directions of the said Branch Bank, it was made by the authorized agents or trustees of said Branch Bank, as it well knows." We think it altogether clear then, that the material facts of the bill cannot be understood to have been stated on

the complainant's knowledge ; and the bill cannot be regarded as more positive in its terms than the answer, and so far as it charges an agreement by the defendant to perform the covenants of Christian with Bradfute, is sufficiently denied by the answer.    This being so, no  reason is perceived why the injunction should not be dissolved.    It will not be pretended that the defendant, by purchasing the fee of the land, became chargeable with the personal engagement of Christian to pay for improvements during the lease to Bradfute.

If the other matters stated in the bill formed a distinct and independent ground of equity, as it respects the defendant, we should  perhaps  conclude  that  these too,  have been  entirely swept away by the answer.

We have but to add, that the order  dissolving the injunction, is affirmed.

GOLDTHWAITE, J·—My view of the  practice, when a carporation is required to answer, is, that the difficulty of getting at a proper discovery, allows the particular officer of the corporation, charged with knowledge of the fact, or with acting for the corporation, to be made a party ; and in such a case, his answer determines the continuance of remedial process.    When this peculiar practice is not conformed  to, but the answer is sought from the corporation, the answer has the same effect as the answer by an individual.    It is said the peculiar reason for making the officer a party must be set out in the bill, and if otherwise, it is ground for demurrer, as in ordinary cases a mere witness cannot be made a party.    [See Story's Equity Plead.]