Opinion by
Rice, P. J.,
The power of the borough of Kittanning to enact the ordinance in question, so far as it relates to gas companies, was distinctly affirmed by this court in Borough of Kittanning v. Kittanning Consolidated Natural Gas Co., 26 Pa. Superior Ct. 355, and by the Supreme Court in Borough of Kittanning v. The Consolidated Natural Gas Co., 219 Pa. 250. By the same reasoning the ordinance must be held valid as to water companies. In the case last cited Mr. Justice Stewart, after indicating the clear distinction between the case of Pittsburg Railways Co. v. Pittsburg, 211 Pa. 479, and the earlier cases of Allentown v. Western Union Tel. Co., 148 Pa. 117, New Hope Borough v. Postal Tel. Cable Co., 202 Pa. 532, and Taylor Borough v. Postal Tel. Cable Co., 202 Pa. 583, and stating that it had been decided again and again that such exercise of power as was involved in the latter cases is within the right of the municipality, concluded his opinion with language which is peculiarly pertinent to the case now before us. He said: “It would seem to be utterly without reason to say that a municipality may exact a license tax on the poles and wires of .a telegraph company, but may not exact *177 it on the pipes and mains of a water company. The logic that allows it in the one case would compel it in the other. Indeed, considering the frequency with which the public streets are necessarily interfered with by water companies in laying, relaying and repairing their pipes and mains, there would seem to be much greater reason for the exercise of this right in connection with such companies than with telegraph companies, since the frequency of the disturbance by the former would evidently require a stricter surveillance to secure the safety and convenience of the general public.” So also in our own case above cited we said: “The power of a borough governed by the general borough law, to provide by ordinance for police supervision and inspection by its officers and servants of pipes laid and maintained under its streets by incorporated gas companies, and, as part of and incidental to such provision, to order the payment by such companies of a reasonable annual license fee or tax, is derived from the same source, and is sustained and governed by the same general principles, as its power to enact similar ordinances relative to the police supervision and inspection of poles and wires of telegraph, telephone and electric light companies, which have been sustained in numerous cases. The fact that the latter are maintained upon the surface of the streets and the former are laid underneath the surface does not prevent the application of these principles. . . . Except as restricted by the act under which,such companies derive their powers, the police power of a borough or city extends to such occupancy and use of the streets, whether upon or beneath the surface, as in its nature requires or justifies supervision at the hands of the municipality in order to safeguard the public in their rightful use of the same streets.” We find nothing in the evidence as to the relation of this particular water company to the borough to prevent the borough, in the exercise of its police power, from subjecting the company to a reasonable license fee or tax.
But it is contended that even if the borough had the power, the fee is excessive and, therefore, the ordinance is void for unreasonableness. This question was also discussed and decided by. this court in the case above cited, and it was there *178 held after deliberate consideration of the authorities and the general principles applicable in the determination of such a question, that in an action to recover such a charge as this the borough is not required to show the cost of proper inspection and surveillance in the presentation of its case in chief. “Presumably, borough officers will act in good faith, and exercise their best judgment and have regard only to the purpose for which it may lawfully be exacted, in fixing the amount; for that is their duty. But their power is not absolute, nor their action irreviewable by the courts. This is plain enough; the difficulty is in laying down a rule whereby the reasonableness of the amount can be determined in any case that may arise. Necessarily any rule that may be adopted must leave some latitude for the exercise of the discretion of the borough officers. Unless this has been exceeded; unless the court is able to say from the facts of which it may take judicial cognizance, or from the undisputed or admitted facts, or if there be a conflict of evidence, then from the duly ascertained facts, that the ordinance is a revenue measure under the guise of a police regulation, or that the license fee is grossly in excess of what was necessary to cover the reasonably to be anticipated expense of proper police supervision, it is not justified in interfering. Even if it be conceded that where there is a conflict of evidence, the controverted facts are to be determined by the jury, still, the burden of proof being on the defendant, the court cannot be convicted of error in giving binding instructions in favor of the borough where the defendant has not furnished evidence from which the jury could find facts which would justify the court in declaring the ordinance unreasonable. For it is to be borne in mind that this is not an action on a quantum meruit, and that where an ordinance is not unreasonable on its face, it is incumbent on one who alleges its invalidity upon the ground of unreasonableness, to aver and prove the facts that make it so.” Applying these principles to the evidence in that case we held that the court committed no error in charging the jury that the presumption in favor of the reasonableness of the license fee had not been overcome, and, therefore, that the borough was entitled to recover. It is true *179 that while the same ordinance and the same license fee are involved in the present case, the appellant here was not a party to that case, and, therefore, was at liberty to attack the ordinance by such pertinent evidence as it was able to produce. We have, therefore, examined the evidence to ascertain whether it ought to have led the court to a different conclusion from that reached in the former case. Some of the witnesses express the opinion that no inspection was necessary, but that was a matter for the corporate authorities to determine. It is claimed further that the sum charged is larger than was necessary to compensate the borough for an inspection that could be made in a few hours. But the charge is not merely for a periodical going over the line of the pipes to ascertain if there are any breaks, but a constant surveillance by the police officers. As in the nature of things it is ordinarily impossible to determine in advance the exact cost, the municipality is at liberty to make the charge large enough to cover any reasonably anticipated expense and the payment of the fee cannot be avoided because it may subsequently appear that it was somewhat in excess of the actual expense of supervision: West Conshohocken Borough v. Conshohocken Electric Light & Power Co., 29 Pa. Superior Ct. 7. “When we consider,” to adopt the language of the learned judge below, “that the defendant corporation was digging up the alleys and paved streets in repairing lines and changing connections, and in searching for leaks; that the policemen were watching for leaks, and for unfilled ditches, and for obstructions on the public highways, putting danger signals when necessary and reporting to the water company and the municipal authorities, in order to save the life and limbs of the inhabitants, as well as the treasuries of the defendant and of the plaintiff,” we are unable to conclude that a charge which amounted to $180 a year for the police inspection and supervision of six miles of water pipe is so clearly unreasonable that the court was required or would have been justified in declaring the ordinance void.
All of the assignments of error are overruled and the judgment is affirmed.