# Chambersburg Borough *v.* Chambersburg Gas Company, Appellant.

*Boroughs—Openings in streets—Ordinance—Gas companies.*

1. A borough has the right in the exercise of its police powers to regulate, inspect and supervise the introduction and maintenance under its streets of the pipe lines of a duly incorporated gas company, and to impose a reasonable charge to reimburse it for the probable expense of such inspection and supervision.

2. In determining whether such charges are proper, the primary presumption is that the borough officers act in good faith, exercise their best judgment, and have regard only to the purpose for which an ordinance may lawfully be enacted. Their power is not, however, absolute, their action being reviewable by the courts.

3. In an action by a borough to recover charges for opening a street, the borough is not required to show the cost of supervision and inspection in the presentation of its case in chief, where there is nothing to indicate upon the face of the ordinance fixing the charges that the borough had enacted it for revenue purposes in the guise of police regulation. The burden is upon the defendant to establish by evidence that the charges are clearly unreasonable, and the ordinance for the reason invalid.

4. In an action by a borough to recover from a gas company charges imposed by ordinance for making openings in highways, it appeared that the ordinance provided a charge of fifty cents for the introduction of service pipe, and a charge of $5.00 per 100 feet for an extension of a gas main. The amount claimed for service pipe was $157 and for extension of mains $322.70. The evidence showed that the city clerk who issued the permits received a salary of $15.00 per month, but no particular sum for the mere issuing of permits. The police force of the borough,

consisting of a chief and four policemen, received salaries amounting to $231 per month, They inspected the openings made by the defendant, but no particular part of their salaries was designated as compensation for this work. The employees of the defendant company testified that the amount of time and work required for the inspection was trifling. *Held,* that a verdict and judgment for the borough for the whole amount claimed should be sustained.

5. A municipality in fixing license fees for opening streets may make the charge large enough to cover any reasonably anticipated expense, and the payment of the fee cannot be avoided because it may subsequently appear that it is somewhat in excess of the actual expense of the supervision.

6. In an action to recover charges for opening a street, evidence is properly rejected to the effect that there were other ordinances which imposed an annual license fee upon the poles and wires of telegraph and telephone companies and electric railways within the municipal limits, and also evidence as to the gross income collected by the municipality under such ordinances.

7. In such a case it is proper to take into consideration as bearing upon the difficulty and expense of inspection the fact that in making excavations in a street it was necessary to do much blasting, and that it was difficult to so fill the ditches that they would not subsequently require refilling.

Argued Oct. 20, 1908. Appeal, No. 75, Oct. T., 1908, by defendant, from judgment of C. P. Franklin Co., Dec. T., 1907, No. 136, on verdict for plaintiff in case of The Burgess and Town Council of Chambersburg Borough v. Chambersburg Gas Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover charges for openings made in streets. Before GILLAN, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial when John F. Etchberger was on the stand, the following offer was made:

We propose to prove by this witness and by the ordinance book of the borough of Chambersburg that there are certain ordinances of this borough which impose upon every telegraph and telephone company within the borough limits, and upon every electric railway company, or other railroad company, a license fee or tax of so much annually for each pole within the

borough, and for each mile of wire, and this to be followed by evidence to show that within the borough of Chambersburg there have been and now are erected considerably over 1,000 poles, the exact number not being known to counsel for defendant, and a great many miles of wire. This offer being made for the purpose of showing what would be the reasonable cost of inspection, if any were needed, for inspecting the trenches and openings made by the defendant company.

Mr. Hoerner: The offer is objected to because there is no ground of comparison between the offer to prove and the acts regulated by the ordinance upon which this suit is brought; that this lack of ground of comparison exists not only as between concrete objects of poles on the one hand, and excavations in the streets on the other, but more particularly does the lack of comparison exist in the acts of assembly and ordinances of the borough which control the license fee in the matter of poles and wires, as against those acts of assembly and ordinances of the borough which control the lawfulness of license fees in the excavations of the street, and is irrelevant and immaterial.

The Court: To admit the evidence would lead us to consider a collateral matter, and we cannot go into it; it is for that reason and for the reason that the evidence is wholly irrelevant and immaterial, that the objection is sustained, the evidence rejected and bill sealed for the defendant. [4]

Mr. Bowers: Defendant now offers to prove by this witness and others the number of public service corporations to which the ordinance of June 24, 1905, applies, together with the public utilities used by the corporations and other persons, who come under the provisions of that ordinance, simply for the purpose of showing the gross income which would be derived by the borough from and by means of the enforcement of the provisions of that ordinance. This, for the purpose of showing that this income would not only very grossly exceed in cost the number of the supervisions contemplated by the law, but would pay the salaries of the whole police force of the borough and leave money besides. This for the purpose of showing that the provisions of that ordinance are unreasonable; and that it is not a police regulation, but a revenue measure.

Mr. Hoerner: The offer is objected to.  First, in so far as it purports to prove the persons and natures of the corporations subject to the provisions of this ordinance, because the ordinance itself specifies what persons shall be subject to it.  Second, that the offer, as to its remainder, is wholly irrelevant and immaterial.

The Court: The objection is sustained, the evidence rejected and bill sealed for the defendant. [5]

Verdict and judgment for plaintiff for $479.70.  Defendant appealed.

*Errors assigned* amongst others were (2) in refusing judgment non obstante veredicto and entering judgment on the verdict; (4, 5) rulings on evidence, quoting the bill of exceptions, and (3) in not submitting to the jury the question whether the ordinance was reasonable or not.

*W. K. Sharp,* of *Sharp & Elder,* and *O. C. Bowers,* for appellants.—The charges imposed by the ordinance for the permits are police regulations and can be sustained only on that ground. If the charges are so great in amount as to be disproportionate to the expense to which the borough may be put by reason of inspection and supervision and by reason of the issuing of the permits, then such charges are excessive and the ordinance becomes a revenue measure and is void: Kittanning Borough v. Natural Gas Co., 26 Pa. Superior Ct. 355; Pottsville Borough v. Gas Co., 33 Pa. Superior Ct. 480.

The learned court below, in view of the testimony, should not have directed a verdict in favor of the plaintiff but should have at least submitted the question of the reasonableness of the ordinance as a question of fact to the jury.

The cost of inspecting other public utilities, to wit: wires and poles, trenches and openings, even if the borough had performed its full duty, could not have exceeded a fair proportion of the total salaries paid to the police force.  The plaintiff borough contended that proper inspection was made by its police officers as part of their duties, and it was admitted by the plaintiff that this inspection was sufficient.  If we had been able to show that the license fees received under the various ordinances taxing

these public utilities would have been sufficient to have paid the salaries of the entire police force it seems to us quite apparent that we would have established our contention that the ordinance was unreasonable and void.

*William S. Hoerner,* with him *Isaac Wingert,* borough solicitor, *J. D. Ludwig* and *T. Z. Minehart,* for appellee.—The point of view from which both the court below, as well as the appellate court, should approach the question, is not, is this particular ordinance reasonable, but, is it unreasonable: Kittanning Borough v. Gas Co., 26 Pa. Superior Ct. 355; Johnson v. Philadelphia, 60 Pa. 445; Chester City v. Tel. Co., 154 Pa. 464; North Braddock Boro. v. Tel. Co., 11 Pa. Superior Ct. 24; Philadelphia v. American Union Tel. Co., 167 Pa. 406; Taylor Borough v. Postal Tel. Cable Co., 202 Pa. 583.

The most noticeable fact in considering the attitude of the court toward ordinances similar to this, is that no ordinance governed by the same statutes as the one in suit has as yet been declared unreasonable by the courts of appeal of Pennsylvania because of the amount of the license fees charged; the legislative bodies of the different municipalities have been allowed to exercise and enforce their discretion in the matter: Landsdowne Borough v. Water Co., 16 Pa. Superior Ct. 490; Springfield Water Co. v. Darby Borough, 199 Pa. 400; Pottsville Borough v. Pottsville Gas Co., 33 Pa. Superior Ct. 480; Kittanning Borough v. Nat. Gas Co., 26 Pa. Superior Ct. 355.

The reasonableness of this ordinance should be decided upon a consideration of it as a whole, but if any part of it should appear to the court to be reasonable, and other parts unreasonable, and it is possible to separate the reasonable from the other parts, in so far as it is reasonable, the ordinance should be sustained: Appeal of the City of Pittsburg, 115 Pa. 4; Commissioners of Northern Liberties v. Gas Co., 12 Pa. 318; Landsdowne Borough v. Water Co., 16 Pa. Superior Ct. 490; Appeal of Borough of Verona, 108 Pa. 83; Com. v. Jackson, 34 Pa. Superior Ct. 174.

OPINION BY PORTER, J., February 26, 1909:

The borough brought this action of assumpsit to recover of

the defendant the charges imposed upon persons or corporations, who made openings in the highways or the streets of the borough, under the provisions of an ordinance approved June 24, 1905. The ordinance required all persons who desire to make openings within the limits of any highway of the borough to first obtain from the chairman of the street committee of the borough a permit authorizing the same. The charges imposed for such permit, so far as they are relevant to this case, are as follows: "For a permit to open a highway for . . . . the introduction of a service pipe the sum of fifty cents; for a permit to open a highway for the extension of a gas or other main, five dollars ($5.00) per hundred feet, or fractional part thereof on highways that are macadamized; and for a permit to open a highway for any other purpose the sum of fifty cents." The second section of the ordinance required all openings made in macadamized highways, between the curb lines, for the extension of gas or other mains, or for the introduction of service pipes, to be closed under the direction and supervision and to the satisfaction of the chairman of the street committee of the borough. The defendant company declined to take out the permits and the borough, waiving the penalty imposed by the ordinance, brought this action of assumpsit to recover the amount which the defendant company would have been required to pay for the permits. No objection was made to the form of the action and the only question raised in the court below was as to the power of the borough to impose the charges. The defendant company did not deny that it had made in the streets openings for the introduction of 314 service pipes, the charges for which imposed by the ordinance would amount to $157, and it admitted that it had made extensions of its mains in the macadamized streets of the borough amounting in the aggregate to a trifle over 6400 feet, the charges for which under the ordinance would be $322.70.

The right and duty of the borough, in the exercise of the police power, to regulate, inspect and supervise the introduction and maintenance under its street of the pipe lines of a duly incorporated gas company and to impose a reasonable charge to reimburse it for the probable expense of such inspection and super-

vision, cannot be questioned: Borough of Kittanning v. Kittanning Consolidated Natural Gas Company, 26 Pa. Superior Ct. 355; Borough of Kittanning v. Consolidated Natural Gas Company, 219 Pa. 250.   The only question to be determined at the trial in the court below was whether the borough in the enactment of this ordinance had exceeded the power with which it was by law invested.   The defendant company contended that the charges imposed by the ordinance were excessive and unreasonable.   The primary presumption is that borough officers act in good faith, exercise their best judgment and have regard only to the purpose for which an ordinance may lawfully be enacted, in fixing the amount; for that is their duty.   Their power is not, however, absolute, their action being reviewable by the courts. The borough is not, in actions of this character, required to show the cost of such supervision and inspection in the presentation of its case in chief, for there was nothing upon the face of this ordinance which would have justified the court in holding that it had been enacted by the borough for revenue purposes in the guise of a police regulation.   The burden was upon the defendant to establish by evidence that the charges were clearly unreasonable and the ordinance for that reason invalid.   The character of the inspection and supervision and the period during which they are to be exercised, in order to protect the public interests, must necessarily vary with the circumstances and conditions under which an opening in a street is made.   No positive rule, naming a fixed charge, can be laid down which would be applicable in any and all cases that may arise.   "Necessarily any rule that may be adopted must leave some latitude for the exercise of the discretion of the borough officers.   Unless this has been exceeded; unless the court is able to say from the facts of which it may take judicial cognizance, or from the undisputed or admitted facts, or if there be a conflict of evidence, then from the duly ascertained facts, that the ordinance is a revenue measure in the guise of a police regulation or that the license fee is grossly excessive of what was necessary to cover the reasonably to be anticipated expense of proper police supervision, it is not justified in interfering.   Even if it be conceded that where there is a conflict of evidence, the controverted facts

are to be determined by the jury, still, the burden of proof being on the defendant, the court cannot be convicted of error in giving bind ng instructions in favor of the borough where the defendant has not furnished evidence from which the jury could find facts which would justify the court in declaring the ordinance unreasonable. For it is to be borne in mind that this is not an action on a quantum meruit, and that where an ordinance is not unreasonable on its face, it is incumbent on one who alleges its invalidity upon the ground of its unreasonableness, to aver and prove the facts that make it so:" Kittanning Borough v. Natural Gas Company, 26 Pa. Superior Ct. 355. It was in this case held that, in a case which presented no federal question, the tribunal having jurisdiction to decide whether or not, under an agreed or duly ascertained state of facts, an ordinance is unreasonable, is the court.

The appellant contends that the court below should have held the charges unreasonable and the ordinance invalid because of what was disclosed by the evidence to have been actually done by the borough in the way of inspection and supervision. The evidence disclosed that the borough had adopted a system for the issuance of the permit, under which although the permit was granted by the chairman of the street committee the permit was actually issued by the city clerk. The city clerk was paid a salary of $15.00 per month for all services rendered in connection with his office, and received in addition a commission of three per centum on all collections made by him, the charges for these permits to open streets being included in said collections. No particular part of the salary of the clerk was designated as compensation for his services in issuing these permits. The police force of the borough consisted of a chief and four patrolmen and the testimony clearly established that it was a part of the duty of all these officers to inspect the streets and alleys of the borough, and that they were required to go over their beats twice a day and report all obstructions and defects in the public highways. It was shown that in some instances the police officers had found the ditches of the defendant company in a dangerous condition and had themselves placed lights at the work, to guard against accidents. The salaries of these

officers amounted to $231 a month. The salary was not split up allowing them so much for each service they performed, and there was therefore no particular part of the salary designated as the compensation which was paid for the inspection of the ditches of this particular company. The evidence disclosed, in addition, that the members of the street committee of councils gave personal attention to the condition of the highways and to the condition of the openings made therein, and that complaints had been made by the members of the committee to this very company. It may here be observed that the ordinance imposed upon the chairman of the street committee the duty of supervising the closing up all trenches and the restoring the highway to its former condition. The contention of the appellant, upon this branch of the case, is that because the borough did not provide a separate organization and a special force for the discharge of its duty to supervise and inspect the openings made in the highways, that it must for that reason be held, to have expended nothing for such inspection. To show that this contention is unsouud it seems to be only necessary to refer to the opinion of President Judge Rice, in Kittanning Borough v. Gas Company, 35 Pa. Superior Ct. 167, where in reference to this very question we find this language: "While the policeman and street commissioners were not paid a specific sum, for the performance of these specific duties, it is a sufficient answer to the claim that the borough expended nothing therefor, to say that the compensation paid the officers, which was considerable in amount, was for all their services, including those rendered in carrying out the purposes of this ordinance."

The defendant company called certain of its own employees who testified as to the manner in which their ditches were filled and the pre-existing conditions restored. These witnesses were of opinion that they did their work so well that no inspection or supervision whatever upon the part of the borough authorities was necessary. Some of these witnesses testified that they themselves continued to inspect the trenches for about a year after they were filled. Some of them testified that it was only necessary to inspect these trenches after each heavy rain, perhaps ten or fifteen times, and that the work could be done upon

each occasion in three hours, and that a fair price for the work would be twenty cents an hour or sixty cents for each entire inspection. One of these witnesses said that a fair price for the inspection necessary during the entire period would be about $25.00, while two others said the amount would be from $20.00 to $25.00. The difficulty with the testimony of these witnesses was that they were not the parties upon whom the law cast the duty of determining what inspection and supervision was necessary, that was a matter for the corporate authorities to determine. The testimony amounted only to an assertion that the sum charged was larger than was necessary to compensate the borough for an inspection that could be made in a few hours. "But the charge is not merely for a periodical going over the line of the pipes to ascertain if there are any breaks, but a constant surveillance by the police officers," during the entire period in which there is a reasonable probability that defects will develop in the street because the openings have been made: Kittanning Borough v. Water Company, 35 Pa. Superior Ct. 174. In the nature of things it is ordinarily impossible to determine in advance the exact cost of the future inspection and supervision; the municipality is therefore at liberty to make the charge large enough to cover any reasonably anticipated expense and the payment of the fee cannot be avoided because it may subsequently appear that it was somewhat in excess of the actual expense of the supervision: West Conshohocken Borough v. Conshohocken Electric Light & Power Company, 29 Pa. Superior Ct. 7.

The offer of the defendant to prove that there were other ordinances of the borough of Chambersburg which imposed an annual license fee upon the poles and wires of telegraph and telephone companies and electric railways within the borough was properly rejected. The borough was not seeking to charge the defendant under such an ordinance. The ordinance which the borough was seeking to enforce did not attempt to impose an annual charge on the pipes of the defendant in the street, but imposed a charge once for all time for openings actually made in the highways. The offer to prove "the number of public service corporations to which the ordinance of June 24th,

1905, applies, together with the public utilities used by the corporations and other persons, who come under the provisions of this ordinance, simply for the purpose of showing the gross income which would be derived by the borough from and by the means of the enforcement of the provisions of that ordinance," was also properly rejected. The offer did not propose to furnish information as to the number of openings in the streets made, during the period in question, by the other public service corporations, nor whether such openings were made in the same highways used by this defendant, so that police inspection and supervision of the openings made by all the parties could be made at the same time: Kittanning Borough v. Gas Company, 35 Pa. Superior Ct. 167.

The evidence disclosed that in making excavations in the streets of Chambersburg it was necessary to do much blasting and that it was difficult to so fill the ditches that they would not subsequently require refilling. This rendered municipal supervision and inspection more necessary and difficult, and what was said in Kittanning Borough v. Natural Gas Company, 26 Pa. Superior Ct. 355, has peculiar application: "The learned judge below upon a view of all the facts in evidence and with better knowledge of the surrounding local conditions than we have, has determined that there was not sufficient evidence to warrant a finding that the ordinance is unreasonable. We have carefully re-examined the evidence in the light of the foregoing principles, and are not convinced that he ought to have held otherwise, or ought to have submitted the question to the jury." The assignments of error are all overruled.

The judgment is affirmed.