# Delaware and Atlantic Telegraph and Telephone Company's Petition.

*Boroughs—Municipalities—Telegraph and telephone companies—License tax—Inspection—Costs of inspection—Act of April* 17, 1905, *P. L.* 183.

1. Under the Act of April 17, 1905, P. L. 183, relating to license fees imposed by municipalities upon public service corporations which have poles, wires, conduits or cables in the public streets, the court, in determining the amount of the annual license fees that may be properly charged, is controlled by the cost of inspection and regulation to the municipality. If there be no inspection or supervision by the municipality there can be no license fee imposed, because under such circumstances no expense will be incurred for which the statute makes the company liable. Under the act no flat per pole or per mile charge can be made applicable throughout the commonwealth, because in no two cases will the cost of inspection be the same.

2. In the exercise of their police powers, municipalities may require poles to be kept in proper condition and wires in safe repair and may see to it that the conduits and other appliances do not interfere with the public use of the street. For these purposes they may provide reasonable inspection and regulation, and impose the cost thereof on the companies.

3. A borough imposed upon a telegraph and telephone company annual license fees which were fixed at $1.00 per pole, $2.50 per mile of wire or cable, and $30.00 per mile of conduit. The court below in proceedings under the Act of April 17, 1905, P. L. 183, found as a fact that the rates were reasonable, and entered a decree accordingly. The Superior Court reduced the fees and found that the amount paid by the company in question and other public service companies aggregated a sum which was about three times the sum paid to the borough's single policeman during the year for inspection duties. It also appeared that after a conduit was laid and the ground had settled, that the inspection of the conduit was little more than perfunctory. It was also shown that very little time was needed in making an effective inspection of the pole line, and that for several years after a new construction there was but little to apprehend from the natural decay of material. It also was shown that the different companies made frequent inspections of their own. *Held*, that the amount of license fees as reduced by the Superior Court should be sustained under the facts of this case, but that the proper rule to guide the courts in every such case under the act of 1905 is the cost of necessary inspection.

Argued Feb. 9, 1909. Appeals, Nos. 345 and 346, Jan. T., 1909, by The Delaware and Atlantic Telegraph and Telephone Company and by the Borough of Sharon Hill, from order of the Superior Court, Oct. T., 1907, No. 189, modifying decree of C. P. Delaware Co., March T., 1906, No. 172, in Petition of The Delaware and Atlantic Telegraph and Telephone Company. Before FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Appeal from the Superior Court.

HEAD, J., filed the opinion of the Superior Court which was as follows:

The Act of April 17, 1905, P. L. 183, provides that where any dispute shall arise between a municipality and any telegraph, telephone, light or power company as to the amount of a license fee named in any ordinance for the inspection and regulation, under the police power of such municipality, of the poles, wires, conduits or cables of such company, either party may apply by petition to the court of common pleas of the proper county, to determine the said dispute. After providing the process to bring the other party into court, and for pleadings to raise the

issues of fact out of which the dispute has arisen, the act directs that it shall be heard and determined "in the way and manner provided by law for the hearing of cases in equity." The act then provides in sec. 4, that "either party shall have the right of appeal from the order of the court, to the Supreme or Superior Court, as in other cases."

The present proceeding resulted in a decree, entered by the learned court below, that the annual license fees fixed in the ordinances of the borough of Sharon Hill, to wit: $1.00 per pole, $2.50 per mile of wire or cable, and $30.00 per mile of conduit, were properly collectible under the evidence produced, and from that decree this appeal is taken.

Is such appeal but a substitute for the common-law writ of certiorari? If so, our functions are limited to an inspection of the record and a determination whether or not the court had jurisdiction, and the proceedings were regular. If the legislature intended the appeal to be of this limited character it would not have been necessary that the right to take it should have been expressly granted. But as the right of appeal has been in terms granted and as the act, in a previous section, had declared that the cause should be determined "in the way and manner provided by law for the hearing of cases in equity," we are disposed to hold that this appeal, like one from the decree in an ordinary case in equity, brings before us the entire record made up by the exceptions filed to the conclusions of law and fact adopted by the learned trial court.

In such a case it has been well settled that the findings of fact adopted by the trial judge, when the ascertainment of such facts involves the balancing of conflicting testimony, the credibility of witnesses, etc., will be regarded by the appellate court as if established by the verdict of a jury. Where, however, such findings are but conclusions or inferences drawn from testimony that is practically undisputed, it becomes our duty to examine the evidence and determine for ourselves whether or not the findings are warranted by it.

The learned court below was not called upon, in this proceeding, to exercise the power possessed by the courts long before the passage of the act now under consideration, viz.: to set

aside an ordinance because it was unreasonable, oppressive and arbitrary, resulting from an abuse of the powers of the municipality. The object of this proceeding was simply to determine, from the evidence produced, "the amount of annual license fees which should be paid to the said municipal corporation in order to properly compensate it for the necessary cost of the services performed, or to be performed, by it, for the inspection and regulation of the poles, wires, conduits or cables, of the said telegraph" or other "company."

The dispute in the present case arose out of the fact that the borough of Sharon Hill claimed the right to levy, from the petitioner and other corporations of its class operating in the borough, annual license fees based on these rates, viz.: $1.00 for each pole erected; $2.50 for each mile of wire strung thereon, and $30.00 per mile for each mile of conduit laid under its streets. Each of these companies, before beginning the work of construction, was obliged to apply for and obtain a permit, for which a charge of $5.00 was made, and to execute and deliver to the borough a bond with satisfactory security conditioned that any streets or sidewalks affected by such construction should be restored to proper condition and maintained in good order thereafter.

The petitioner itself has constructed in the borough, two and one-fifth miles of conduit, 15.15 miles of wire and ten poles, so that its annual license fee would amount to $113.88. As there was some common use, by the several companies there operating, of portions of property severally owned, the learned court found that all of the annual fees claimed would be, in addition to the petitioner's.............................. $113 88

 Suburban Gas Company:
  4.3 miles pipe........................... $129 00
 Springfield Water Company:
  4.4 miles pipe........................... $132 00
 Citizens' Light Company:
  175 poles....................... $175 00
  10 miles wire................... 25 00
             $200 00

Amount carried forward............... $574 88

Amount carried forward . . . . . . . . . . . .                    $574 88
Western Union Telegraph Company:
 36 poles. . . . . . . . . . . . . . . . . . . . . . . $ 36 00
 27 miles wire. . . . . . . . . . . . . . . . . . .   67 50
                  $103 50
Chester Traction Company:
 42 poles. . . . . . . . . . . . . . . . . . . . . . . $ 42 00
 5 miles wire. . . . . . . . . . . . . . . . . . . . .   12 50
             $ 54 50
       Total. . . . . . . . . . . . . . . . . .   $732 88

It was shown that the borough had committed to its single policeman, the duty of inspecting the poles, wires and conduits of the several companies and for this service paid him a salary of $20.00 per month, or about one-third the amount of the annual license fees, levied to compensate it for the services performed in the "inspection and regulation" contemplated by the act. It was not alleged or proven by the borough that the inspection thus given was not fully up to any municipal requirement, that it was not adequately compensated in the amount paid the policeman, or that a proper inspection sufficient to enable the borough to discharge every duty it owed to its citizens in the premises could not have been had even for less money.

On the contrary, the testimony offered by the petitioner, which was uncontradicted, tended to prove that when a conduit has been laid under ground, when the frosts of the winter and the thaws of the spring have once come and gone, and the overlying surface has been then adjusted to the new conditions, all surface indications marking even the location of the buried conduit will have practically disappeared and inspection of the line thereafter could at best be but little more than perfunctory. It would seem, therefore, that an annual charge of $30.00 per mile would go far beyond the compensation contemplated by the act.

As to the pole and wire structure the evidence would fairly lead to the conclusion that for a period of years after new construction there is but little to apprehend from the natural decay

of the material. But such a structure is plainly subject to injury from external causes, high winds, heavy snows and the like, and therefore might properly be inspected several times each year by a careful municipality. But both poles and wires may be inspected at the same time, and it is manifest from the testimony that no great amount of time need be spent in making an effective inspection of a pole line. The borough, too, has the benefit of the frequent inspections made by the companies themselves whose business cannot be transacted unless their lines are maintained in efficient working order. The borough is of course not required to accept these inspections as conclusive and may properly supplement them by its own. But the fact that they are made by competent men and with the end of maintaining the lines in standard condition ought not to be lost sight of in a proceeding like the present.

We are not unmindful, on the one hand, that the object of inspection is the regulation that is to follow, and that reports must be made and so kept that their information is available for the use of councils; whilst, on the other hand, the courts have repeatedly declared that a municipality may not, under the guise of license fees, levy and collect revenue to be expended in the discharge of municipal obligations: Kittanning Boro. v. Telegraph Co., 26 Pa. Superior Ct. 346; Pottsville Boro. v. Pottsville Gas. Co., 33 Pa. Superior Ct. 480.

Realizing the difficulty of arriving at the exact sum which a borough should properly undertake to collect, as license fees, from companies like the petitioner, the legislature has wisely provided that the question should be subject to a readjudication at the end of two years. Thus, accumulating experience will beget increased knowledge, serious disputes will more rarely arise and their adjustment will become more easy and accurate.

After endeavoring to give due weight to all of the evidence contained in the record and an attentive consideration to the aim and object of the statute, we have reached the conclusion that the decree entered by the learned court below, should be so modified as to make the maximum sum which the borough shall be authorized to charge as license fees against the petitioner, $10.00 per mile for each mile of conduit; $1.50 per mile

for each mile of wire, and fifty cents for each pole, and the record is remitted to the court below with direction to enter a decree in accordance with this order. The costs of this appeal to be paid by the respondent, the borough of Sharon Hill.

*Error assigned* was the judgment of the Superior Court.

*William I. Schaffer* and *John G. Johnson,* for appellant, Delaaware and Atlantic Telegraph and Telephone Company.—The probable expense of inspection is the only thing which a municipality can take into account in fixing license taxes: Schellsburg v. Western Union Tel. Co., 26 Pa. Superior Ct. 343.

One of the purposes in laying underground conduits is to do away with dangerous and unsightly poles. Notwithstanding the endeavor of the appellant to do away with poles, the borough in this case has levied upon its conduits a tax about equal to that heretofore levied on its poles, because there are about thirty poles in a mile. The reason for the inspection of poles certainly does not exist with reference to the inspection of conduits.

Some of the cases passed upon by the lower courts and the license taxes fixed are as follows: Postal Tel. Cable Co. v. Hollidaysburg Boro., 17 Pa. Dist. Rep. 298, pole tax, twenty cents (C. P. Blair County); Pennsylvania Tel. Co. v. Gaysport Borough, 17 Dist. Rep. 300, pole tax, twenty-five cents (C. P. Blair County); Curwensville Boro. v. Huntingdon, etc., Tel. Co., 16 Dist. Rep. 602, pole tax, ten cents (C. P. Clearfield County); Penna. Tel. Co. v. South Bethlehem Boro., 16 Dist. Rep. 878, pole tax, ten cents (C. P. Northampton County); Carlisle v. United Tel., etc., Co., 15 Pa. Dist. Rep. 193, pole tax, ten cents (C. P. Cumberland County ); Consolidated Tel. Co. v. Easton, 16 Pa. Dist. Rep. 887, pole tax, ten cents (C. P. Northampton County); wire tax, fifty cents per pole mile instead of wire mile.

It is manifest that the sum fixed by the borough to be paid its police officer for inspection is a mere arbitrary amount, that the sum does not represent the probable and justifiable expense which it is under as a result of the occupation of its highways

by the various public utility companies, and that if it is put to any expense at all, the expense is of a most trifling character.

*Edward P. Bliss,* for appellant, Sharon Hill Borough.—The charge of $1.00 per pole and $2.50 per mile of wire has been declared reasonable in Allentown v. Western Union Tel. Co., 148 Pa. 117; Chester v. Western Union Tel. Co., 154 Pa. 464; Phila. v. American Union Tel. Co., 167 Pa. 406; New Hope Boro. v. Postal Tel. Co., 202 Pa. 532; Taylor Boro. v. Postal Tel. Co., 202 Pa. 583; Ridley Park Boro. v. Electric Light, etc., Co., 9 Pa. Superior Ct. 615; Boro. of North Braddock v. Telegraph Co., 11 Pa. Superior Ct. 24; Kittanning Electric Light, etc., Co. v. Kittanning Boro., 11 Pa. Superior Ct. 31; New Hope Boro. v. Telegraph Co., 16 Pa. Superior Ct 306; Taylor Boro. v. Postal Tel. Co., 16 Pa. Superior Ct. 344; Kittanning Boro. v. Telegraph Co., 26 Pa. Superior Ct. 346.

The fee of $30.00 per mile of underground conduit has been upheld in Kittanning Boro. v. Gas Co., 219 Pa. 250; Kittanning Boro. v. Gas Co., 26 Pa. Superior Ct. 355; Kittanning v. Garretts Run Gas Co., 35 Pa. Superior Ct. 167; Kittanning v. Water Co., 35 Pa. Superior Ct. 174.

There is no substantial difference between the rule enforced in the cases above cited, that the fees must be reasonable, and the direction in the act of 1905, that the court shall determine the amount to be paid to the municipality to properly compensate it for the necessary cost of the inspections, etc.

The character, frequency and extent of the inspection are within the discretion of the municipal authorities and their discretion will not be interfered with by the court unless it is shown to have been abused: Beach on Public Corporations, sec. 942, note; Dillon on Municipal Corporations, sec. 698a, note; Taylor Boro. v. Postal Tel. Co., 202 Pa. 583; Kittanning Boro. v. Gas Co., 26 Pa. Superior Ct. 355.

OPINION BY MR. JUSTICE ELKIN, March 8, 1909:

For many years controversies growing out of the imposition of license fees or taxes have arisen between public service corporations and the municipalities in which they do business.

A large number of such cases have been considered by our appellate courts, and the rules of law heretofore applicable thereto may be found in repeated decisions of the Supreme Court from Allentown v. Western Union Tel. Company, 148 Pa. 117, to Kittanning Boro. v. Gas Company, 219 Pa. 250, and of the Superior Court from Ridley Park Boro. v. Electric Light, etc., Company, 9 Pa. Superior Ct. 615, to Kittanning Boro. v. Water Company, 35 Pa. Superior Ct. 174. These cases are all founded upon ordinances passed prior to the act of 1905, and while they were actions at law they were considered as if upon certiorari to determine the legal rights of the parties and without reference to the statutory proceedings authorized by said act. The right to impose these license fees was sustained as a police power, but it was uniformly pointed out that general revenue for the support of the municipal government could not be raised under the guise of a license tax for police regulation. This principle has been recognized in every case, and in no instance has it been suggested that it might be modified or varied or weakened in its application. It is true that under the old forms of action it was often difficult for an appellate court to pass upon questions of fact necessary to determine whether a particular ordinance under consideration did impose a revenue tax or a license fee. Because of this limitation upon the courts the practice became quite general throughout the commonwealth to establish flat rates per pole, per mile or per car as the case might be, upon an arbitrary basis and without reference to the cost of police inspection or supervision. An examination of the cases will show that the municipalities were given a wide latitude in the imposition of these license charges and their right to do so was not interfered with unless for gross abuse. This was the situation when the act of 1905 was passed, and this legislation grew out of the unsatisfactory methods then existing for the determination of such controversies. The purpose of the act is stated to be the providing of a method for the determination by the courts of common pleas, with the right of appeal, of all disputes between municipalities and telegraph, telephone, light and power companies, relating to the reasonableness of the amount of license fees. In the third section of the

act the duty is imposed upon the court hearing the cause to determine the amount of the annual license fees necessary to properly compensate the municipality for the cost of the services performed, or to be performed, by it for the inspection and regulation of the poles, wires, conduits or cables belonging to such public service corporations and located within the limits of the municipality. This is a statutory rule binding upon the courts. The amount of the license fees to be charged is measured by the cost of the service performed or to be performed during the year for municipal inspection and regulation. If there be no inspection or supervision by the municipality there can be no license fee imposed, because under such circumstances no expense would be incurred for which the statute makes the companies liable. If there be inspection and supervision, the measure of liability imposed by the act is the cost of the same to the municipality. The cost of the service is the rule adopted by the legislature to guide the courts in determining the disputes between the parties. This rule cannot be ignored or lightly set aside, and it should be the central and controlling thought in the mind of the court in the determination of such disputes. Of course, when the ordinance is passed in advance of any service rendered it may and no doubt will be difficult to fix with mathematical precision the amount of the license fee before the cost of the service is definitely known, and some reasonable allowance must necessarily be made for contingencies that may happen. However, the courts should see to it that under the guise of a reasonable allowance the municipality is not permitted to impose a tax for general municipal purposes, or to disregard the rule which limits the license fee to the cost of inspection. Under this rule no flat per pole or per mile charge can be made applicable throughout the commonwealth, because in no two cases will the cost of inspection be the same. Many boroughs do not inspect at all, and in such cases no license fee can be charged. Other boroughs may require very little inspection, while others may need more, but in each instance the inquiry must be, what is the cost? The legislature fixed the rule and imposed the duty to determine all such controversies according to that rule upon the courts

when proper preceedings are instituted. The rule is imperative and cannot be disregarded.

Another question raised by this appeal is whether the borough authorities in the present case were justified in making any provision for inspection and regulation. It is contended that the inspection by the companies was ample and sufficient to protect the public, and that no municipal inspection was, necessary. It is true that the courts have held companies furnishing electricity or operating by electrical forces to the very highest degree of care by way of inspection and maintenance. It is meet and right to do so, because of the great danger to the public having to deal with such agencies. The duty of inspection and maintenance imposed by law upon these companies can be more safely relied on as a protection to the public than the casual and indifferent inspection made by a borough officer without any technical knowledge of the business. There are many things, however, which the borough may properly do by way of police regulation. It can require the poles to be kept in proper condition, the wires in safe repair, and see to it that the conduits and other appliances do not interfere with the public use of the streets. Reasonable latitude must be allowed the municipalities in dealing with this subject, but on the other hand they should not be permitted to make useless and unnecessary inspections at the cost of the operating companies. This is also a question for the courts to determine in a proceeding instituted under the Act of April 17, 1905, P. L. 183. In the case at bar we think the borough was justified in requiring the inspection directed by the ordinance, and hence the only question for determination is as to the amount of the license fee imposed. The learned judge of the court of common pleas treated the question upon the theory that the borough ordinance should be sustained on the presumption that it was reasonable without reference to whether it was based upon the cost of inspection or not. In this we think there was error. When the petition was filed under the act of 1905, the proceedings were de novo, and it was the duty of the court to hear and determine the questions involved upon the pleadings, having due regard for the weight of the evidence. The Superior Court on appeal took

up the question and did modify the decree entered in the court below by fixing the amount of the license fees upon the basis of the cost of inspection, although there may be some doubt as to the strict application of the rule in arriving at the proper amount to be charged. The case was very intelligently considered by the learned judge who wrote the opinion and since the amount involved in this particular case is small, no useful purpose can be served by prolonging the controversy. The per pole and per mile license fee charged in this case cannot be taken as a precedent on which to base charges in other municipalities throughout the commonwealth, because each case must depend upon its own facts and in every case the cost of inspection must be the measure of liability.

Decree affirmed and record remitted to the court below with instructions to enter judgment in favor of the borough of Sharon Hill for the amount of the license fees as fixed by the Superior Court.

The costs on the appeal to this court to be paid by appellant and all other costs to be paid as directed by the decree of the Superior Court.