## UGI Corporation v. City of Allentown

*William S. Hudders,* for plaintiff.

*James N. Diefenderfer,* for defendant.

KOCH, P. J., November 12, 1969.—This action in equity, instituted by UGI Corporation, a public utility corporation engaged in the business of providing gas service in the City of Allentown, seeks to enjoin defendant city from enforcing that portion of ordinance 9817 which imposes an annual license tax of $15 per

mile on gas mains located within the municipal corporate limits. The request for permanent relief is based upon the contention that the provision of the ordinance is illegal, unlawful and unenforceable as to plaintiff.

After the filing of an answer by the city, the parties filed a stipulation of facts which may be summarized as follows:

"1. That the plaintiff provides gas service in Allentown pursuant to various certificates of public convenience issued by the Pennsylvania Public Utilities Commission.

"2. That the plaintiff, in accordance with statutory authority, is subject to the jurisdiction and regulation by the Public Utilities Commission.

"3. The plaintiff corporation, in furnishing gas service, provides and utilizes the gas mains which are subject to the tax."

Ordinance no. 9817, which became effective on October 1, 1962, contains this title: "Establishing license tax fees on all persons, firms, partnerships and corporations engaged in any trade, business or occupation within the corporate limits of the City of Allentown." Section 1, which lists a variety of business enterprises and the amounts of the license tax contains the provision under attack: "Gas companies, per mile of mains, $15.00." A feature of the ordinance which should be observed is that gas companies are subject to a tax of $100, the legality of which is not an issue in this proceeding.

In essence, plaintiff maintains that the legislature has withdrawn from third class cities and vested in the Public Utility Commission the power to regulate UGI insofar as safety and inspection are concerned and that a license tax which purports to defray the cost of these regulation expenses is invalid and void. The reasonableness of the fee is not challenged. The

city argues that the ordinance is a valid exercise of its "residual police powers" and that since there was no express repeal of the right to impose reasonable license fees for the use of city streets, the action of city council must be upheld.

While plaintiff does not specifically attack the ordinance as nothing more than a revenue raising device, we regard it as significant that the ordinance does not, in any way, relate to inspections and public safety and makes no reference to the use of streets. In any event, we are persuaded that an analysis of the legislative enactments and the various decisions of the Supreme Court oblige us to declare the gas main feature of ordinance 9817 invalid on the ground that the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1101, et seq. has abrogated the power to enact this type of ordinance.

It is clear that, prior to the establishment of the Public Service Commission in 1913, municipalities, pursuant to their police powers, could impose license taxes on public utilities. In Delaware and Atlantic Telegraph & Telephone Company's Petition, 224 Pa. 55, decided in 1905, the court, after referring to earlier cases, said at page 63:

"The right to impose these license fees was sustained as a police power, but it was uniformly pointed out that general revenue for the support of the municipal government could not be raised under the guise of a license tax for police regulation."

Similarly, in Kittanning Borough v. American Natural Gas Company, 239 Pa. 210, the court recognized the right of municipalities to adopt police regulations concerning public service companies and impose revenue taxes to defray the expense of inspection. It is true that the Act of April 17, 1905, P. L. 183, 72 PS §6161, under which these cases were decided, remains unrepealed, but we suggest that this legisla-

tion simply outlined a procedure to determine the reasonableness of the tax where a dispute arose and was not, as contended by defendant, the source of the power to levy the license tax fee.

We believe that with the enactment of the Public Utility Law, supra, in 1937, the basic preexisting regulatory and inspection powers passed to the Public Utility Commission. As authority for this conclusion, we regard Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323, as significant. That decision outlined various provisions of the Public Utility Law which compel utilities to furnish and maintain service and facilities. At page 335, the court said:

"In the absence of a clear expression of intent on the part of the legislature to authorize a municipal subdivision by zoning ordinance to regulate a public utility, no such power can be implied. The Public Utility Code demonstrates without question that *the Legislature of the Commonwealth of Pennsylvania has therein expressed its policy to commit the regulation of utilities to the Public Utility Commission and to impose a duty upon utilities to render efficient service.*" (Italics supplied.)

In Lansdale Borough v. Philadelphia Electric Company, 403 Pa. 647, it was held that initial jurisdiction in matters concerning the relationship between public interests and the public is in the Public Utility Commission and this includes "rates, service, rules of service, extension and expansion, hazard to public safety due to use of utility facilities, . . . obtaining, alerting, dissolving, abandoning, selling or transferring any right, power, privilege, service, franchise or property and rights to serve particular territory."

Based upon the various provisions of the public utility legislation and the decisions, we are of the opinion that if the power and responsibilities to regulate are under the jurisdiction of the Public Utility Com-

mission, *limited* residual police powers still retained by the city must be examined with great care. See, for example, City of Easton v. Miller, 265 Pa. 25 (1919), where the municipality passed an ordinance providing that "all vehicles including street passenger cars shall, upon entering the public square . . . turn to the right thereof, and pass around said square as herein directed." The court upheld the ordinance as a reasonable exercise of control over the streets.

The ordinance before us does not reveal any intent to promote public safety or regulate streets; it is obviously a revenue raising measure. We note also that the stipulated facts contain no reference to inspections or other details which might indicate an exercise of police power. In maintaining that Petition of Pennsylvania Gas Company, 258 Pa. 234 (1917), supports defendant's position, we suggest that the ordinance in that case which imposed an annual license fee per mile of pipe also contained provisions for annual inspection and supervision. Moreover, that case purported to decide nothing more than the question of reasonableness of the fees established by the City of Erie.

Defendant acknowledges that it does not base its power to enact the provision of the ordinance in question upon section 2601 of The Third Class City Code of June 23, 1931, P. L. 932, 53 PS §37601, which authorizes the imposition of license fees for revenue purposes in an amount not exceeding $100 annually. Its contention rests entirely upon the principle of "residual police powers" and that since the Act of 1965 supra was not specifically repealed, the right to enact the per mile fee remains. In advancing the proposition that its power emanates from this unrepealed act, it relies upon various principles of statutory construction, but we are of the opinion that Girard Trust

Company v. Philadelphia, 336 Pa. 433, governs. There, at page 436, it was held:

"A subsequent statute which sets up a general or exclusive system governing the entire subject-matter of the former law and intended as a substitute for it, or one which establishes a uniform and mandatory system repeals the pre-existing enactments by implication: Rhoads v. Building and Savings Assn., 82 Pa. 180; Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308."

In applying the principle of the Girard case to the issue before us, we are obliged to adopt the view that in the enactment of the Public Utility Law the legislature chose to set up a uniform and Statewide system of utility control, thus removing from defendant its power to enact the per mile inspection fee which *might* have found its source in the Act of 1905: Lansdale Borough v. Philadelphia Electric Company, supra; Chester County v. Philadelphia Electric Company, 420 Pa. 422; Duquesne v. Upper St. Clair Township, supra.

Our research has failed to disclose any decision of the appellate courts dealing with the precise question before us. There is, however, at least one recent Common Pleas Court decision where the enactment of a similar ordinance was challenged. In Pa. Power & Light Co. v. City of Scranton, 66 Lack. Jur. 18, (1964), the city sought to regulate and license the erection of utility poles and imposed an annual license fee. In striking down the ordinance, President Judge Hoban said at page 21:

". . . the city has no longer jurisdiction of the regulation of the placement, structure, color or maintenance of the poles in question and that sole jurisdiction thereof is vested in the Public Utility Commission. Hence the ordinances must be stricken down. It, there-

fore, becomes unnecessary to discuss the question as to whether the license fees purported to be charged under the ordinances are reasonable or unreasonable or whether they are an attempt to levy a tax in the guise of license."

We conclude that ordinance No. 9817 as it pertains to the license tax upon gas mains is invalid and an appropriate decree nisi is entered herewith.

Our decision in this case does not invalidate other provisions of the ordinance which contains the following saving clause in article III, sec. 2:

"If any section or subsection, clause or paragraph or provision of this ordinance shall be adjudged invalid, all such adjudications shall apply only to the section, subsection, paragraph or provision so adjudicated and the remainder of this ordinance shall remain valid and effective."

## DECREE NISI

Now, November 12, 1969, it is ordered, adjudged and decreed as follows:

1. That the provision of City of Allentown Ordinance 9817 as it pertains to the establishment of a license tax fee upon "gas companies, per mile of mains" is illegal, unlawful and unenforceable.

2. That defendant, City of Allentown, is perpetually enjoined from enforcing the provision of ordinance 9817 referred to in paragraph 1 as it pertains to plaintiff.

3. That each party pay its own costs.

Now, November 12, 1969, the foregoing adjudication and decree nisi are ordered filed, and if no exceptions are filed within 20 days after service of a copy

thereof upon counsel for the respective parties, the decree nisi shall be entered as the final decree in the case.