## Pittsburgh Railways Company *v.* Pittsburgh, Appellant.

*Taxation—Street railways—Property tax—License tax—Act of March 7, 1901, P. L. 20, sec. 3, Art. 19, Pars. 4 and 22.*

A tax imposed by a city of the second class of twenty-five cents per foot "for each lineal foot of track laid, maintained or operated" by a street railway within the city, exclusive of such tracks as may be in its yards or buildings, is a property tax, and cannot be maintained as a license tax or fee within the meaning of article 19, sec. 3, paragraphs 4 and 22 of the Act of March 7, 1901, P. L. 20, although the tax in the ordinance is designated as a license tax.

| | |
|---|---|
| 211 | 479 |
| f 211 | 489 |
| f 211 | 490 |
| 211 | 479 |
| 33 SC | 433 |
| f 33 SC | 437 |
| 211 | 479 |
| e219 | 251 |
| h219 | 252 |
| d 34 SC | 618 |
| d 34 SC | 622 |
| 211 | 479 |
| 35 SC | 172 |
| 35 SC | 176 |

Argued Jan. 9, 1905. Appeal, No. 12, Oct. T., 1905, by defendants, from decree of C. P. No. 2, Allegheny Co., July T., 1904, No. 153, on bill in equity in case of Pittsburgh Railways Company v. City of Pittsburgh and John F. Steel, treasurer of city of Pittsburg. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to enjoin the collection of a tax.

FRAZER, P. J., filed the following opinion:

The purpose of the bill in this case was to restrain defendants from collecting from plaintiff a "license tax" imposed under an ordinance of the city of Pittsburg, approved October

20, 1903, and February 27, 1904. From the bill, answer and proofs we find the following facts:

### FINDINGS OF FACT.

1. Plaintiff is a corporation created under the laws of the commonwealth of Pennsylvania for the purpose, among other things, of contracting " with any person or persons, firms, corporations, or any other party howsoever formed, existing or that may hereafter exist in any way ; that said parties or any of them may have authority to do, build, construct, maintain or manage any work or works, public or private, which may tend, or be designed to make, increase, facilitate, or develop trade, travel or the transportation and conveyance of freight, live stock, passengers, and any other traffic by land or water from or to any part of the United States, or the territories thereof, and the said company shall also have power and authority to supply or furnish all needful materials, labor, implements, instruments and fixtures of any kind and every kind whatsoever on such terms and conditions as may be agreed upon between the parties respectively, and also to purchase, erect, construct and maintain or conduct in its own name and for its own benefit or otherwise, any such work, public or private as they may by law be authorized to do, including also herein lines for telegraphic communication and to aid, cooperate and unite with any other company, person or firm in so doing " and that by virtue of its charter is now and has been for some time past, under proper authority, operating a system of street railways in the cities of Pittsburg and Allegheny and adjacent boroughs and townships.

2. The city of Pittsburg is a municipal corporation and a city of the second class under the laws of this commonwealth, and Edward J. Frauenheim, the other defendant, is the duly elected and acting treasurer of the co-defendant city.

3. Councils of the city of Pittsburg passed an ordinance entitled " An Ordinance establishing and levying license taxes for general revenue purposes upon street railways, telephone, telegraph, electric light or power, water, gas and heat companies or corporations doing business in the City of Pittsburg regulating the collection of the same and imposing penalties for default in payment," which ordinance was duly approved

by the mayor of the city on October 20, 1903.  Subsequently, another ordinance entitled " An Ordinance levying' taxes and assessing water rents for the fiscal year beginning February 1st, 1904," was passed by the city councils and approved by the mayor of the city on February 27, 1904.

4. Each of the ordinances above referred to contains, inter alia, the following provision: " Upon each and every street railway company or corporation the sum of 25 cents per foot for each lineal foot of track laid, maintained or operated by such Company or corporation within the limits of the City of Pittsburg, exclusive of such track as may be in the yards or buildings of such Company or corporation." The ordinance of October 20, 1903, requires the proper officers of the corporations named therein and made taxable thereunder to submit to the treasurer of the city on or before the first day of February of the year 1904, a report showing " the length of track, wire, or pipe as the case may be, laid, erected, maintained or operated as aforesaid by such company or corporation," and thereupon it is made the duty of the city treasurer to fix the license taxes for the year, basing the same upon the report or reports so returned.

5. In pursuance of the ordinance above referred to, Edward J. Frauenheim as treasurer of the city of Pittsburg, fixed the license tax against the plaintiff for the year 1904 at the sum of $219,265.25, basing the same upon a report made by plaintiff company to him, in which the aggregate length of its tracks within the city of Pittsburg was shown to be 877,061 lineal feet, which tax defendant city has threatened to collect through its proper officers by process of law if not paid at once.

6. Plaintiff's railway tracks are laid in many of the streets of the city of Pittsburg, and also extend into and through the cities of Allegheny and McKeesport, and adjacent boroughs and townships, and are indispensable in carrying on its business, and are used by plaintiff in operating its cars and carrying passengers in conducting the business of street railway company.

7. Plaintiff, as a corporation of this commonwealth, pays tax to the commonwealth of Pennsylvania upon its capital stock and gross receipts in accordance with the general revenue laws of the state, and also, under the Act of 1859, upon its real

estate within the city of Pittsburg for city purposes. Its state and local taxes for the year 1903 amounted to $422,325.11.

### CONCLUSIONS OF LAW.

The city founds its right to assess and collect the "license tax" provided for in the ordinance of October 20, 1903, and February 27, 1904, on paragraphs 4 and 22 of section 3 of the act of March 7, 1901, entitled "An Act for the government of cities of the second class." These paragraphs read as follows:

"IV. Every city of the second class shall have the power for general revenue purposes to levy and collect a license tax to be fixed by ordinance upon street railways, hack drivers, auctioneers, and all and every corporation, company or individual doing business in said city, payable annually and to regulate the collection of the same."

"XXII. And every city of the second class shall have power for general revenue purposes to levy and collect license taxes or fees to be fixed by Ordinance upon street railways, hack drivers, auctioneers, bill posters, public halls or dances, night soilers, garbage collectors, railroad switches, pawn brokers, peddlers, vendors of any kind of merchandise whatever using the streets, lanes, highways, wharves, or public squares or grounds for the purpose of vending the same; all theatrical exhibitions whether permanent or transient (including circuses) vehicles, bicycles, tricycles, automobiles, dogs, ball games, or ball parks, and all other matters and things of a like nature, and to regulate the collection of the same and to provide penalties for default therein."

In this connection perhaps we had better also quote paragraph one of section three of the same act, which is as follows:

"I. To levy and collect taxes for general revenue purposes not to exceed 10 mills on the dollar in any year on all persons' real, personal and mixed property within the limits of said city, taxable according to the laws of the state of Pennsylvania for county purposes, the valuation of such property to be assessed as hereinafter provided."

It is well settled that municipal corporations possess no powers except those conferred by law. "They have no inherent jurisdictions to make laws or adopt governmental regulations, nor can they exercise any other powers in that regard

than such as are expressly or impliedly derived from their charters or other statutes of the state:" Laramie County v. Albany County, 92 U. S. 307.

While the commonwealth may either tax the corporation or its property, and may delegate that power to a municipality, in the event of a delegation the statute conferring the same should be strictly construed.

The fourth and twenty-second paragraphs of the act, so far as applicable to street railway companies, are identical in language. While paragraph twenty-two is the more comprehensive and includes additional subjects, it is no more definite in its relation to street railway companies than is the fourth paragraph. We can, therefore, consider them as one enactment in applying their provisions to these proceedings.

Does the language of these paragraphs authorize a license or a tax? A license is a "price paid for a privilege."

A tax is "an enforced proportional contribution levied upon persons, property or income for governmental needs." While license fees are not imposed to provide revenue they may be exacted for such purpose, if proper authority exists therefor. If imposed for revenue they must be uniform upon the same class of subjects, and if imposed merely for regulation they must be reasonable: Taylor Boro. v. Tel. Co., 202 Pa. 583, and the cases therein cited.

If the charge in this case is a "license fee," is it reasonable? The reasonableness of the fee rests in the first instance with the city councils, and unless the charge is obviously unreasonable courts will not interfere. In cases of this class the reasonableness of the fee must not be measured by the length or value of the company's track or electric system, nor by the volume of its business. The elements to be considered are the expense incident to the issuing of a license and the probable expense to the municipal authorities in regulating, inspecting and affording police surveillance of the maintenance and operation of the corporation's lines. It being the duty of the municipality to protect its citizens by seeing that the works of quasi public corporations are properly maintained, the license fee usually exacted from such corporations is intended to meet that expense and is not imposed for revenue purposes. The amount of the assessment imposed under the ordinances of

October 20, 1903, and February 27, 1904, is $219,265.25, which, in our opinion, is largely in excess of any annual expense the city may reasonably incur in regulating and inspecting the tracks and transportation facilities of plaintiff. That amount is sufficient to employ for one year more than 200 competent men. That such a sum of money is necessary, or that so large an army of men will be required for that purpose does not appear from the pleadings or the testimony. If this charge is a license fee we are clearly of the opinion that it is so obviously excessive as to be clearly unreasonable and therefore invalid.

The charge is objectionable as a license fee, also, because the fee is not uniform upon all street railways. While possibly license fees need not in all cases be uniform, yet when such intention can fairly be inferred from the statute allowing such fees they should be made uniform. That such appears to have been the legislature's intention in this case may be inferred from the fact that by paragraphs four and twenty-two of the act of 1901, street railway companies are classified with auctioneers, bill posters, pawnbrokers, peddlers, etc., and that by ordinances of the city councils based upon that act or similar statutes, all bill posters are required to pay annually a uniform license fee, also all pawnbrokers, and all peddlers, etc. Operas and circuses are also charged a uniform fee, all of these fees being fixed in the ordinance without regard to the amount of property used, or volume of business done. If the city councils interpreted the legislative intent to be that all other objects mentioned in these paragraphs and made subject to the payment of a license tax should be uniform why provide an irregular and fluctuating fee from railway companies? It seems reasonable that the paragraphs should apply in the same manner to all subjects mentioned therein.

If this charge is not a license fee it must necessarily be a tax and have legislative warrant for its imposition. It cannot be imposed under the first clause of section three above quoted, because neither the real nor personal property of street railway companies is taxable for county purposes. The authority of the city to assess as a tax, if it exists at all, must therefore be found in the fourth and twenty-second clauses of section 3 of the act of 1901. The act provides that the charge shall be

levied for general revenue purposes, shall be fixed by ordinance, and shall be upon "street railways, hack drivers, auctioneers and all and every corporation, company or individual doing business in said city." As an authority delegated by the state to impose and collect a tax, the clause is quite indefinite.

Surely, it will not be contended that the real estate of a corporation or individual is liable to tax thereunder. If not, how can it be said to authorize a tax upon either the personal property of an individual or upon the tracks of other tangible property of a street railway company? If the clause authorizes a tax at all, it is more likely a tax on business than on property. It has been the law in this state for many years that property necessary to carry out the purposes of a quasi public corporation is not taxable for local purposes where such property is included in the capital stock which pays a state tax. In the city of Pittsburg, however, by the act of June 4, 1859, the real estate of railway companies is made subject to taxation for city purposes the same as other real estate, but nowhere do we find any law directly subjecting their tracks to assessment. The act of 1901 authorizes a "license tax" upon street railways "doing business" in the city; that language, it seems to us, if it authorizes a tax at all, authorizes it either upon the company itself or upon its business, and does not empower an assessment upon a portion only of the corporation's property. Therefore, if the ordinances impose the charge upon the tracks, and the language used, viz., "25 cents per foot for each lineal foot of track, laid, maintained or operated," seem to us to do so, the assessment is not authorized by any law and is accordingly void. The fact that the corporation must pay the assessment does not change its nature. That it is a tax is strengthened by the fact that the money realized from the corporation is paid into the city treasury and becomes part of the general fund of the municipality and is applicable to all its expenses. While we have not been referred to any case in which our appellate courts have passed upon the nature of an assessment similar to the one involved here, the Supreme Court of Ohio in Railway Co. v. The State, 49 Ohio, 189 (30 N. E. Repr. 435), held that a statute requiring " every corporation or company operating a railroad or any part of a railroad within this

state to pay a fee of one dollar per mile for each mile of track" operated within the State imposed a tax upon property, and in State v. Railroad Corporations, 4 South Carolina 376, the Supreme Court of that state in passing upon a statute enacting "a general license law," which provided, inter alia, that every railroad company or corporation, the length of whose main track and branches together is greater than 250 miles, shall pay a license fee of $1,250, held, that the statute imposed a tax upon property.

In any light we look at the assessment against plaintiff it cannot be sustained. If it is a license fee it is invalid because of unreasonableness and want of uniformity; if it is a tax it is a tax upon property, and therefore void for want of authority of law to impose it. An injunction should be issued as prayed for. Let a decree be drawn accordingly.

*Error assigned* was decree enjoining the collection of the tax.

*W. B. Rodgers*, with him *T. D. Carnahan*, for appellant.— The tax was proper as a license tax : Allegheny City v. Ry. Co., 159 Pa. 411 ; Com. v. Standard Oil Co., 101 Pa. 119 ; Phila. Contributionship, etc., v. Com., 98 Pa. 48 ; Kittanning Coal Co. v. Com., 79 Pa. 100 ; People ex rel. v. Knight, 174 N. Y. 475 (67 N. E. Repr. 65) ; Homes Ins. Co. v. New York, 134 U. S. 594 (10 Sup. Ct. Repr. 593).

*John G. Johnson*, with him *Edwin H. Stowe* and *Reed, Smith, Shaw & Beal*, for appellees.—The tax levied by the ordinance is undoubtedly a property tax : Kittanning Coal Co. v. Com., 79 Pa. 100 ; Ry. Co. v. State of Ohio, 49 Ohio, 189 (30 N. E. Repr. 435) ; Brookfield v. Tooey, 141 Mo. 619 (43 S. W. Repr. 387) ; State v. R. R. Corps., 4 S. Car. 376.

If this is a property tax as levied it is invalid : Com. v. Standard Oil Co., 101 Pa. 119 ; Palace Car Co. v. Com., 107 Pa. 156 ; Lehigh Coal & Nav. Co. v. Northampton County, 8 W. & S. 334 ; R. R. Co. v. Berks County, 6 Pa. 70 ; Schuylkill Nav. Co. v. Berks County, 11 Pa. 202 ; St. Mary's Gas Co. v. Elk County, 168 Pa. 401 ; West Chester Gas Co. v. Chester County, 30 Pa. 232.

OPINION BY MR. JUSTICE BROWN, April 17, 1905:

The decree in this case might well be affirmed on the opinion of the learned president judge of the court below. We shall not, therefore, attempt to add anything to what he has said, but very briefly emphasize his view that the city of Pittsburgh is attempting to levy and collect a property tax from the appellee without statutory authority to do so.

The ordinances under which the city has imposed the tax provide that there shall be established and levied as an annual "license" tax "upon each and every street railway company or corporation the sum of twenty-five (25) cents per foot for each lineal foot of track laid, maintained or operated by such company or corporation within the limits of the city of Pittsburgh, exclusive of such track as may be in the yards or buildings of such company or corporation." As authority for the passage of these ordinances and the collection of the tax imposed by them, the city relies upon paragraphs IV and XXII of the third section of art. 19 of the Act of March 7, 1901, P. L. 20. Those paragraphs are: "IV. Every city of the second class shall have power, for general revenue purposes, to levy and collect a license tax, to be fixed by ordinance, upon street railways, hack drivers, auctioneers, and all and every corporation, company or individual doing business in said city, payable annually, and to regulate the collection of the same." "XXII. And every city of the second class shall have power, for general revenue purposes, to levy and collect license taxes or fees, to be fixed by ordinance, upon street railways, hack drivers, auctioneers, bill posters, public balls or dances, night soilers, garbage collectors, railroad switches, pawn brokers, peddlers; venders of any kind of merchandise whatever, using the streets, lanes, highways, wharves, or public squares or grounds, for the purposes of vending the same; all theatrical exhibitions, whether permanent or transient (including circuses), vehicles, bicycles, tricycles, automobiles, dogs, ball games or ball parks, and all other matters and things of a like nature, and to regulate the collection of the same and to provide penalties for default therein."

What the act of assembly authorizes the city to levy and collect is a license tax or fee, and the ordinances are so worded. They term the tax assessed against the appellee a "license"

tax; but no matter what the municipal authorities call it, the question is, what is it? The tax is twenty-five cents per foot " for each lineal foot of track laid, maintained or operated " by the appellee within the city of Pittsburgh, exclusive of such tracks as may be in its yards or buildings. The tracks of a street railway company are as much its property as are its power houses, car barns or repair shops; and, if so, could it be seriously argued that an annual tax of twenty-five cents per lineal foot on a car barn would not be a tax on the property, no matter by what name called, especially if to be collected for the general revenue purposes of the municipality? Manifestly it would be such a tax, and such is the character of the tax which the appellant would impose on the tracks of the appellee. We are told that this question has not been decided in this state. We can recall no case in which it was raised, but in other jurisdictions the view just expressed has been entertained. By a statute of the state of Ohio $1.00 per annum was imposed upon each mile of railroad track within the state, the statute calling it a fee. Of it the supreme court of that state said, in Railway Co. v. State of Ohio, 49 Ohio, 189 : * " Its nature is not affected by the name that may be assigned to it. It is an exaction levied upon railroad tracks and railroad tracks are property. It does not differ in principle from a fixed sum levied upon all farmers of the state for each acre of land of which they may be seized, or each head of horses or other live stock that they may own. In both instances the tax is levied upon property." In State v. South Carolina Railroad Co., 4 So. Car. 376, it was held that a sum of money which an act of the legislature required to be paid to the state treasurer for the use of the state by every railroad company, to be determined by the length of its road, was a tax upon property.

The authority conferred on the city of Pittsburgh by the paragraphs quoted from section 3, art. 19, of the act of 1901, is to levy and collect a license tax or fee. The attempt is to collect a property tax which is not authorized by either of the paragraphs and the decree is affirmed at appellant's costs.

---

* Also reported 30 N. E. Repr. 435. Reporter.