# Philadelphia to use *v.* Townsend, Appellant.

*Road law—Streets—Paving—Charges for paving—Discretion of councils—City of Philadelphia—Act of March 30, 1866, P. L. 354.*

1. The Act of March 30, 1866, P. L. 354, which provides that the charges made by the city of Philadelphia for paving "shall be fixed, from time to time, by ordinances of councils," commits to the discretion of councils the fixing of the cost charge of paving, and unless such a charge is fixed at an obviously unreasonable figure in a proceeding against a property owner to recover the cost of paving, the courts will not interfere, or even receive evidence upon the point.

2. The courts will not review the discretion of councils in fixing the cost charge of paving at the rate of $2.60 per square yard although the actual contract price of the work is only $2.16 per square yard.

Argued Jan. 6, 1911. Appeal, No. 201, Jan. T., 1910, by defendants, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1905, No. 4,411, M. L. D., on verdict for plaintiff in case of Philadelphia to use v. Henry C. Townsend et al., Trustees. Before FELL, C. J., BROWN, MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Scire facias sur municipal lien for paving. Before BARRATT, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $2,600. Defendant appealed.

*Errors assigned* were (1, 2) overruling offers of evidence as set forth in the opinion of the Supreme Court.

*Alex. Simpson, Jr.*, for appellants.—The rejected offer of proof shows that the city is attempting to charge the property owners with the cost of paving the intersections, in direct violation of the acts of assembly.

The actual cost of the paving is all that can be recovered, while here the offer of proof shows that considerable in excess thereof is charged: Philadelphia v. Sellers, 6 Phila.,

253; Philadelphia v. Cottage Co., 9 Phila. 84; Lea v. Phila., 80 Pa. 315; Witman v. Reading, 169 Pa. 375; Park Avenue Sewers, 169 Pa. 433.

These assessments being local taxes for a local improvement, in the nature of things there can be no recovery beyond the cost of the improvement: Hammett v. Phila., 65 Pa. 146; Weber v. Reinhard, 73 Pa. 370; Phila. v. Pemberton, 208 Pa. 214.

*E. O. Michener* for appellee.—The city of Philadelphia has the right to fix by general ordinance the price to be charged per square yard for paving streets as against the abutting properties, without regard to the amount of the contract price between the contractor and the city: Philadelphia v. Jewell, 135 Pa. 329; Philadelphia v. Sellers, 6 Phila. ' 253; Philadelphia v. Cottage Co., 9 Phila. 84; Stroud v. Philadelphia, 61 Pa. 255; Lea v. Philadelphia, 80 Pa. 315; Phila. v. Coates, 18 Pa. Superior Ct. 418; Williamsport v. Hughes, 21 Pa. Superior Ct. 443; Leominster v. Conant, 139 Mass. 384 (2 N. E. Repr. 690); Philadelphia v. Miller, 2 W. N. C. 302.

OPINION BY MR. JUSTICE MOSCHZISKER, April 10, 1911.

The city of Philadelphia entered into a contract with the use plaintiff for the paving of a certain street, including intersections, at a price of $2.16 per square yard. The contractor agreed to accept in payment assessment bills against the abutting properties at the rate of $2.60 per square yard, that being the figure fixed' by a general ordinance as the cost of street paving, any balance over the total of such bills to be paid in cash out of the city treasury. A municipal claim was filed against the property of the defendant in which he was charged for paving at the rate named in the ordinance. At the trial the defendant offered to prove the street paving contract at $2.16 per square yard; that the total of the work under the contract amounted to $57,111.81; that of this amount $55,105.33 was paid by the giving of assessment bills,

including the one by virtue of which the lien against his property was filed; that the cost of paving the intersections at the contract price of $2.16 a square yard amounted to $11,190.57, only $2,006.48 of which came directly out of the city treasury, the balance of $9,184.09 being paid by assessment bills; that if this latter sum were apportioned among all the assessable properties according to the square yards of paving in front of each, it would result in a credit of $266.22 upon the claim in this case; that the only direct expenses to which the city was put in connection with the paving were the cost of seeing that the work was done according to contract and for advertisements, which altogether did not exceed $660.97; that if this latter sum were apportioned among the assessable properties the defendant's proportion would not exceed $23.61; that the fees actually paid in all of the other departments or bureaus of the city government in any way having to do with street paving were greater than their charges or expenses during the period that the work in question was being contracted for and performed; that there were no other charges directly or indirectly connected with said improvement for which the city had been or could be made liable, unless the salaries of the mayor, the city solicitor, and the director of the department of public works, and the chiefs of the bureaus of highways and surveys, rent of rooms and expenses of councils were to be considered and apportioned, as to which the defendant conceded no estimate or apportionment could be made and that such items were not intended to be covered by the offer; finally, that the special benefit accruing to the defendant's property by virtue of the improvement was less than the cost of paving at $2.16 per square yard.  Counsel for the defendant stated, "The purpose of the offer is to claim as a matter of law that the utmost that the city can recover is either the $2.16 per square yard or the $2.16 per square yard plus the cost to which the city was directly put in connection with this work."  The offer was overruled.  A verdict

was rendered for the plaintiff for the full amount of the claim and the defendant has appealed. The question is, should the court below have received the proffered evidence?

Section 40 of the Act of February 2, 1854, P. L. 21, provides: "It may be prescribed by ordinance that paving of streets, except at the intersections thereof . . . . shall be done at the expense of the owners of the ground in front of which such work shall be done, and liens may be filed by the said city for the same;" sec. 8 of the Act of April 21, 1855, P. L. 264: "The charges . . . . shall be at not exceeding the following rates . . . . for street paving $1.00 per square yard; and all extra or further charge and for intersections shall be paid out of the general taxation;" and sec. 1 of the act of March 30, 1866, P. L. 354: "That so much of the eighth section (of the act of 1855) as limits the charges to be made by the city of Philadelphia . . . . for street paving to $1.00 per square yard . . . . so far only as said limitations are concerned, and all other acts and parts of acts which limit the charges made by said city for . . . . paving . . . . be and the same are hereby repealed, and hereafter all said charges and rates shall be fixed, from time to time by ordinance of councils."

Referring to these acts, Mr. Justice MITCHELL, in Philadelphia v. Jewell, 135 Pa. 329, at p. 340, said: "The act of 1843 allowed the property owner to show in defense that the price charged for the work is 'greater than the value thereof,' but, this having been found to be inconvenient in practice subsequent acts changed the system so far as to permit the city to fix the charge which should not be questionable: Lea v. Philadelphia, 80 Pa. 315. The city now collects from the property owner, not the value of the work, but its cost as fixed by ordinance; and this mode of ascertaining and fixing the cost is sustained on the ground of the public necessity and convenience, inherent in all rational taxation, that there should be a settled, ascertained, uniform, and practical method of

computing the amount due by the taxpayer." In Lea v. Philadelphia, supra, we said per curiam: "From the very nature of the work the cost must consist of many items . . . . which can be ascertained only by a fair estimate of the entire cost, and the average per foot. This was necessarily left to the local authority, which alone could determine it justly, and apportion it fairly. Hence, the legislature . . . . committed the adjustment of the cost . . . . to the city itself, as the only just means of fixing a rightful charge upon the lot owner." These excerpts are applicable to the case at bar. The charge made against the property of the defendant of necessity includes, in addition to the actual contract price and ascertainable incidental expenses, not only a proportion of many other expenses directly connected with such work, but also a proportionate part of the cost of the maintenance of the city government indirectly connected with and properly chargeable thereto, which it would be altogether impossible to fix or apportion with any degree of accuracy. Under the act of assembly the city had the right to assess the property at the rate fixed in the ordinance. The fact that it saw fit to pay the contractor by the transfer of assessment bills, rather than by a direct payment in cash, does not alter the case in the least; nor can we see that the comparatively small amount of cash paid out of the city treasury justifies the conclusion that the city is attempting to charge the property owners with the cost of paving the intersections. This is only another way of saying that the city derived a profit from the contract, which would be "a mere inference not warranted by the facts alleged:" Philadelphia v. Coates, 18 Pa. Superior Ct. 418.

The offer was not to show that the price per yard for paving provided in the general ordinance was grossly, or obviously, or clearly excessive; it did not so describe the charge, nor did it contain any facts or figures which if substantiated would have upheld any such characterization. Conceding that such a tax must be limited to the

cost of the improvement, it is for councils to say, considering the contract price and the other elements to which we have already adverted, what that cost will amount to, and what the charge shall be. In other words, the fixing of the cost charge is committed to the discretion of councils. It may be that an abuse of discretion on the part of councils in fixing the charge would be reviewable by the courts: Pittsburg Railways Co. v. Pittsburg, 211 Pa. 479; Kittanning Borough v. Natural Gas Company, 26 Pa. Superior Ct. 355; Chambersburg Borough v. Chamberburg Gas Co., 38 Pa. Superior Ct. 311. But unless such a charge should be fixed at an obviously unreasonable figure the courts would not interfere, or even receive evidence upon the point: New Hope Borough v. Postal Tel. Cable Co., 202 Pa. 532; Allentown v. Western Union Tel. Co., 148 Pa. 117; Western Union Tel. Co. v. City of Philadelphia, 22 W. N. C. 39; Kittanning Borough v. Natural Gas Co., supra. Granted the power, in the present case the difference between the contract price and the charge fixed by councils was not so considerable as to justify judicial interference.

The assignments of error are overruled and the judgment of the court below is affirmed.