## Bethlehem Poster Advertising and Sign Corporation v. City of Bethlehem et al.

*Equity—Bill-board ordinance—Seal of corporation—Declaration of nuisance—Regulation of location—License fees—Injunction.*

1. Where a bill in equity is signed by the corporate name and by the president of the corporation, it is not necessary to add the seal of the corporation.

2. Where a corporation has erected bill-boards and has leased land and proposes to erect other bill-boards on it, and a municipality threatens to prevent the continuance of the bill-boards and the erection of any others, equity has jurisdiction where it appears that the ordinance under which the municipality proposes to act is unreasonable and void.

3. An ordinance which provides that bill-boards not in conformity with its provisions, erected in various parts of the city, are common nuisances, and that they may be removed by the municipality, is unreasonable and void.

4. An ordinance which provides that no bill-board shall be located at the intersection of public streets closer than seventy-five feet from the corner of the intersecting streets, and that the lot on which a bill-board is erected shall have a fence of sufficient height and strength to prevent access to the same, is unreasonable and void, as it deprives owners of private property of their right to use the same.

5. The power to regulate bill-boards and to collect a reasonable license fee for the inspection of the same is given to a municipality under the police power, but all that a municipality can charge is the cost of reasonable inspection.

Demurrer to bill in equity. C. P. Northampton Co., Dec. T., 1921, No. 1.

*Butz* and *Rupp* (of the Lehigh County Bar) and *E. Allen Frost* (of the Illinois Bar), for complainant.

*George R. Booth,* City Solicitor, for defendants.

STEWART, P. J., Feb. 13, 1922.—This is a demurrer by the defendant to a bill, asking for an injunction against the defendant enforcing the provisions of "An ordinance defining bill-boards; regulating the construction, erection, use and maintenance thereof; providing for the removal thereof; levying and assessing license taxes and fees thereon; and providing penalties for the violation of the provisions thereof." The bill alleges that the complainant is a corporation duly incorporated under the laws of this Commonwealth for the purpose of erecting and maintaining bill-boards and selling advertising space, etc.; that it is the successor of a business formerly conducted under the name of the Bethlehem Poster Advertising Company; and that it owned certain bill-boards and rental contracts pertaining to the same, and a large number of leases of property for bill-posting used in the City of Bethlehem; and that it possessed a large and profitable business of advertising; that the number of its leases was forty-four; and that it had agreed to pay to the owners of the property large sums of money for the purpose and privilege of maintaining its bill-boards upon the leased property; that it possessed a large number of contracts from persons desiring to make use of its bill-boards for advertising purposes; and that the posters used in advertising were of a standard height, to wit, nine feet high, with a width of twenty feet six inches to twenty-one feet; and that the boards to carry said posters must be at least eleven feet high by twenty-five feet wide; that all its bill-boards have been entirely erected upon private property; that the bill-boards are erected in a substantial, permanent, sanitary and safe manner, almost entirely of iron or steel, capable of withstanding strong winds, so as not in anywise to jeopardize the lives and safety of the public; and that it has a large number of men employed in repairing the bill-boards and keeping them in a safe condition; that on Oct. 17, 1921, the City of Bethlehem passed an ordinance, the title

Bethlehem Poster Advertising and Sign Corporation v. City of Bethlehem et al.

of which is given above; that the ordinance is unlawful and void for fifteen reasons, which it is not necessary to specify in detail. The defendant's demurrer is to the effect that the complainant is not entitled to the relief claimed; and that the defendant is not liable to the complainant in any way; that the bill does not show any case entitling it to relief; and that the court has no jurisdiction; and that the bill purports to be filed by a corporation, but the same is not executed, signed and sealed under the authority of said corporation as required by law. The bill is signed by the Bethlehem Poster Advertising and Sign Corporation, by Irving Rosencrans, President, and in the affidavit he swears that he is the president of the complainant corporation. Upon the argument the complainant offered to amend by adding the seal of the corporation to the bill, and such amendment will, undoubtedly, be permitted, but, in our judgment, it is not necessary. The only authority cited by the learned city solicitor was East End Reformed Presbyterian Congregation v. Milligan, 40 Pitts. L. J. 7, the syllabus of which is: "A bill in equity, filed by a church corporation against a former pastor, alleged to be unlawfully in possession of church property, will not be held bad on demurrer because not under the corporate seal, where the bill also alleges that the defendant has possession of such seal." An examination of the case shows, however, that President Judge Stowe did not rest his decision upon the ground that the defendant had possession of the seal. The bill in that case was signed by the president and secretary, and President Judge Stowe said that the presumption was that they acted with the authority of the corporation. In Morawetz on Private Corporations, § 338, it is said: "In former times it was held that a corporation could not express its will or enter into a contract except through an instrument under seal, executed by a duly constituted agent. This doctrine certainly had no principle based upon reason to support it; on the contrary, it seems to have been a result of the ignorance of the art of writing during the dark ages. It was never rigorously applied in all cases, which shows that it did not result from the nature of a corporation, and in modern times the ancient rule has been wholly discarded. It is now a rule well settled throughout the United States, that a corporation may make a contract without the use of a seal in all cases in which this may be done by an individual." To the same effect are the authorities collected in Eastman on Private Corporations in Pennsylvania, § 101. Under the equity rule, with reference to answers, it has been held that the answer must be under the seal. See discussion in Haight v. Proprietors of the Morris Aqueduct, 4 Wash. C. C. Rep. 601. The demurrer cannot be sustained for the fifth cause. It is unnecessary to cite many authorities that the court has jurisdiction. It is undoubted. See Mahoning & Shenango Railway and Light Co. v. New Castle, 233 Pa. 413. Upon the remaining causes, while the general subject is an interesting one, and while it has been discussed by the highest courts in many of the states, it is impossible to reconcile the decisions. As Judge Trexler said in Pittsburgh Poster Advertising Co. v. Swissvale Borough, 70 Pa. Superior Ct. 224: "The authorities are not all in harmony." A very elaborate discussion of the cases is found in St. Louis Gunning Advertisement Co. v. City of St. Louis et al., 137 S. W. Repr. 929, and it would seem from an examination of the opinion in Cusack Co. v. City of Chicago et al., 242 U. S. 526, affirming Cusack v. City of Chicago et al., 108 N. E. Repr. 340, that the trend of authority is toward a stricter supervision of billboards than that laid down in the earlier cases, notably City of Passaic v. Paterson Bill Posting, Advertising and Sign Painting Co., 72 N. J. L. Reps.

2 D. & C.

285, which is a leading case on the subject. However, the law seems to be well settled in Pennsylvania in the Swissvale case and in Bryan v. City of Chester, 212 Pa. 259. The syllabus of the latter case is as follows: "A municipality has no power to enact an ordinance forbidding citizens to erect bill-boards on their own property merely because such boards are unsightly or may create a nuisance. Any citizen against whom such an ordinance is sought to be enforced is entitled to the protection of a court of equity. Under the police powers of a municipality, it may prohibit the erection of insecure bill-boards within its limits, prevent the exhibition from secure ones of immoral or indecent advertisements or pictures, and protect the community from any actual nuisance resulting from the use of them, but it can go no further. All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public, but a limitation without reason or necessity cannot be enforced." Mr. Justice Brown places the decision in that case upon the following quotation from Crawford v. City of Topeka, 51 Kansas, 756: "All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public, but a limitation without reason or necessity cannot be enforced. In what way can the erection of a safe structure for advertising purposes, near the front of a lot, endanger public safety any more than a like structure for some other lawful purpose? . . . Although the police power is a broad one, it is not without limitation, and a secure structure which is not an infringement upon the public safety and is not a nuisance cannot be made one by legislative fiat and then prohibited: Yates v. Milwaukee, 10 Wall. 497; 1 Dillon on Municipal Corporations, § 374. It is doubtless within the power of the city to prohibit the erection of insecure bill-boards or other structures, to require the owners to maintain them in a secure condition, and to provide for their removal at the expense of the owners in case they become dangerous. Perhaps regulations may be made with reference to the manner of construction so as to insure safety, but the prohibition of erection of structures upon the lot line, however safe they might be, would be an unwarranted invasion of private right." In Pittsburgh Poster Advertising Co. v. Swissvale Borough, 70 Pa. Superior Ct. 224, the syllabus is: "While a municipality has, under its police power, the right to enact an ordinance for the licensing and regulation of bill-boards, it cannot, in such an ordinance, compel an applicant for a license to sign an agreement that he will keep the property in a clean condition, clear of all rubbish, garbage, waste paper and similar things; nor can it provide that the board must be three feet above the street curb, inasmuch as that would prevent the use of lots lying lower than the street from being employed as sites for bill-boards; nor can it provide that the bill-board must be painted; nor can it exact the payment of fifty cents per lineal foot as a license fee without any provision specifying the term during which such fee is available." Judge Trexler, in his opinion, said: "We are not prepared to say that the provision that the base of the bill-board shall be three feet above the ground is unreasonable. This space may serve a useful purpose for sanitary inspection and also prevent the use of the rear of the board for purposes which might affect the health and comfort of the immediate neighborhood; but the provision that it must be three feet above the street curb is unreasonable. It would prevent the use of certain lots lying lower than the street from being employed as sites for bill-boards. . . . The provision as to the payment of fifty cents per lineal foot license fee is also open to serious criticism.

Bethlehem Poster Advertising and Sign Corporation *v.* City of Bethlehem et al.

Evidently, if the ordinance is correctly printed in the paper book, the thought of the borough council has not been completely expressed. Section 8 provides: 'Before any license is issued by the borough secretary a fee of fifty (50) cents per lineal foot of space occupied by said boards or other devices shall be paid to the secretary, which fee shall entitle said applicant to erect said boards and other devices and maintain the same until next succeeding.' If the fifty cents per lineal foot is for the inspection of the board during its erection, it is too high, for there is no evidence that any such sum is required to compensate the borough for the cost of such inspection. If it is to include inspection thereafter, then the term during which said fee is available for that purpose should be set forth in the ordinance, and this was evidently the intention of the borough, but the time was omitted. . . . We see no reason why the judgment of the authorities when reasonably exercised may not determine how bill-boards in the future shall be erected in order to secure the safety and health of the people, but we think the provisions of the ordinance specified are unreasonable and are not within the powers of the borough authorities to enact." Taking up the ordinance, the 2nd section provides: "That hereafter no bill-board shall be erected or used except in accordance with the provisions of this ordinance, and then only upon permit issued by the superintendent of the department of public safety, and all others are hereby declared to be common and public nuisances." The 8th section is substantially to the same effect. It does not appear in the bill what the sizes of the forty-four bill-boards now owned by the complainant are, but the effect of that section would be that if it hereafter uses any of its bill-boards which do not conform to the ordinance, they would become common nuisances. No municipality has any legal right to declare a bill-board to be a nuisance unless it is in fact a nuisance. Whether a structure is a nuisance or not depends upon the facts and circumstances of each case. If a bill-board had been erected of metal, perfectly secure and safe, conforming to the provisions of this ordinance in everything except that it would exceed in size the one referred to in the ordinance, under this ordinance it would be a public nuisance. The owner of that bill-board would thus be liable to have his bill-board removed by the municipality. Such a deprivation of property cannot be justified. Identically the same section is found in an ordinance of the Borough of Munhall, and President Judge Swearingen, in Pittsburgh Bill-posting and Distributing Co. *v.* Borough of Munhall, Court of Common Pleas No. 4, Allegheny County, No. 92, First Term, 1910, held it to be void. The 4th section of the ordinance provides as follows: "That all bill-boards shall be constructed in accordance with the following specifications and none other, to wit: (*a*) They shall not be more than thirteen (13) feet in height from the surface of the ground, and not more than fifty (50) feet in length; (*b*) they shall be raised from the ground so that the lower ledge is not less than three (3) feet nor more than five (5) feet above the surface of the ground." The provision of this ordinance as to the height of the bill-board "above the surface of the ground" is different from the Swissvale case, where the provision was that it must be three feet above the street curb. There can be no objection to that provision of the present ordinance, nor would we be inclined to hold the ordinance unreasonable merely because the bill-board permitted by the ordinance is less by one foot than the standard size referred to in the bill. Although, upon demurrer, all facts well pleaded are deemed to be admitted, nevertheless, in a matter like that of height depending so much upon the judgment of business men, the court ought not to interfere, and we

2 D. & C.

shall not further discuss that feature, in view of the statement made by the learned city solicitor that he had no doubt that the city council would amend the size of the board to meet what seemed to be a necessity of complainant's business. In Cream City Bill Posting Co. v. City of Milwaukee et al., 147 N. W. Repr. 25, it was held: "A bill-board ordinance requiring the lower edge of bill-boards not to be more than three feet nor less than two feet above the surface of the ground is reasonable. . . . An ordinance requiring bill-boards to be built of incombustible material within the city fire limits is not unreasonable. An ordinance requiring bill-boards to be of sufficient strength to withstand a wind pressure of forty pounds to the square foot is not unreasonable." The following provisions of the ordinance, however, are unreasonable and void: "If erected at the intersection of a public street, [it] shall be so located as not to interfere with or render unsafe the traffic of and upon such street, but no sign shall be located closer than seventy-five feet from corner of two city intersecting streets; (h) and the lot on which a bill-board is erected shall have a fence of sufficient height and strength to prevent access to the same, or a fence shall be placed around the bill-board at least five (5) feet distant therefrom, and design and material of said fence shall be approved by the department of public safety." The first clause is attempted to be justified on the ground that the police power of the city makes such a provision necessary to avoid accidents at the intersection of public streets. As has often been said, it is hard to define what police power is, but it has always been held that no municipality can do anything under the guise of police power that will injure or damage the property rights of any citizen. The bill alleges that the complainant is in possession of a lot of leased property, and that it proposes to lease other property. The Supreme Court quoted with approval from Crawford v. City of Topeka, 51 Kan. 756, and that case expresses the exact limits of the power that city council can exercise. In City of Passaic v. Paterson Bill Posting, Advertising and Sign Painting Co., 72 N. J. L. Reps. 285, it was held: "A city ordinance requiring that sign or bill-boards shall be constructed not less than ten feet from the street-line is a regulation not reasonably necessary for the public safety, and cannot be justified as an exercise of the police power."

In Com. v. Boston Advertising Co., 188 Mass. 348, an enactment forbidding the maintenance of business signs so near a parkway as to be plainly visible to the naked eye of persons in the parkway was held to be invalid as amounting to a taking of property for a public use without compensation. Such interference with private property is unconstitutional. We are aware of what was decided by the Supreme Court of the United States in Cusack v. City of Chicago et al., 108 N. E. Repr. 340, but our own decision in Bryan v. City of Chester, 212 Pa. 259, condemns that provision of the ordinance, and the same reasoning applies to the fence clause quoted above. No city can compel anybody to erect a fence on private property. The 5th section of the ordinance is as follows: "That in order to defray the cost of inspection herein provided for and to minimize the size and number of bill-boards in the city, a license tax of ten (10) cents per square foot of space per year be and the same is hereby levied and assessed upon the owners and proprietors of all bill-boards, which tax shall be payable to the city treasurer on the 1st day of March of each year, but which may be apportioned for fractional part of a year, as provided in Ordinance No. ——. The superintendent of public safety shall annually, at least thirty (30) days before said tax is payable, furnish the city treasurer with a statement of all bill-boards within the city, their size and the owners thereof, and thereupon the city treasurer shall pro-

ceed to collect said tax in the manner provided by law; if said license tax shall not be paid within ten (10) days after the same shall be payable, the owner thereof shall be deemed to have violated the provisions of this ordinance and shall be subject to the penalty hereof, and said bill-board shall be forthwith removed and abated by the superintendent of the department of public safety, and cost of removal of same shall be collected from owner or owners." This is called a license tax, and the purpose is said to be inspection. The 9th section provides: "That each and every bill-board shall be thoroughly inspected at least once a week by the police officers, who shall ascertain its condition with particular reference to its safety, and report any defects therein to the superintendent of the department of public safety through the chief of police." It is objected that the fees and taxes provided to be paid under the terms of the ordinance are excessive, unreasonable and oppressive, and that the defendant will not permit the erection of any bill-boards unless upon the payment of the license tax of 10 cents per square foot. It is strongly contended by the learned counsel for the complainant that this case is ruled by Pittsburgh Poster Advertising Co. *v.* Swissvale Borough, 70 Pa. Superior Ct. 224, but a casual examination of that case shows that the court did not say 50 cents per lineal foot of space was unreasonable. They did say that 50 cents per lineal foot was unreasonable for inspection during erection, and that is all they could say, because the ordinance was defective in its wording. We are, therefore, remitted to the general rules which apply to this subject. In the first place, no section of the Clark Act, June 27, 1913, P. L. 568, expressly refers to bill-boards. In the brief filed for the defendant reference is made to article v, sections 4, 23, 39 and 40, but we do not think they support the contention that they refer to bill-boards. The power to regulate them can be sustained under section 46. That section is similar to sections found in previous acts, and in Titusville *v.* Gahan (No. 1), 34 Pa. Superior Ct. 613, it was held: "A city of the third class has no power to levy and collect a license tax from theatres or bill-posters exclusively for general revenue purposes. It has authority, however, to levy such taxes upon theatres and opera houses under the police power expressly delegated to it, and upon bill-posters under the police power conferred by the general welfare clause of the city's charter; but an ordiance imposing such a license tax which expressly states in its title that the tax is 'for general revenue purposes' will be construed as a revenue and not as a police measure, and will be declared invalid by the courts." However, the ordinance in this case is declared to be for inspection, and the fee is declared to be a license tax. In Pittsburgh Railways Co. *v.* Pittsburgh, 211 Pa. 479, the ordinance was held to be invalid, although the tax was called a license tax. Mr. Justice Brown said, on page 487: "What the act of assembly authorizes the city to levy and collect is a license tax or fee, and the ordinances are so worded. They term the tax assessed against the appellee a 'license' tax; but, no matter what the municipal authorities call it, the question is, what is it?" That case was distinguished in Kittanning Borough *v.* Consolidated Natural Gas Co., 219 Pa. 250, and Mr. Justice Stewart expressly pointed out that the tax in the former case was a property tax, and in the latter case it was a tax "to enable the municipality, without cost to itself, to discharge the duty it owes to the public of exercising proper and reasonable surveillance and inspection with respect to the manner in which the company is exercising its privileges." All that a municipality can charge with respect to bill-boards is the cost of reasonable inspection. In Delaware & Atlantic Telegraph and Telephone Co.'s Petition, 224 Pa. 55, it was held: "Under the Act of April 17, 1905, P. L. 183,

2 D. & C.

relating to license fees imposed by municipalities upon public service corporations which have poles, wires, conduits or cables in the public streets, the court, in determining the amount of the annual license fees that may be properly charged, is controlled by the cost of inspection and regulation to the municipality. If there be no inspection or supervision by the municipality, there can be no license fee imposed, because, under such circumstances, no expense will be incurred for which the statute makes the company liable. Under the act, no flat per pole or per mile charge can be made applicable throughout the Commonwealth, because in no two cases will the cost of inspection be the same." In Kittanning Borough *v.* American Natural Gas Co., 239 Pa. 210, it was held: "The power of municipal corporations to defray the expense of inspecting their works is well settled. The presumption is that such license taxes are reasonable and the burden is upon the company objecting to the same to show that they are not reasonable, which may be done by showing that the cost of inspection is much less than the license tax imposed. . . . In an action by a municipality against a public service corporation to recover license fees, where the evidence shows that the aggregate amount of the license fees charged on all companies similarly situated in the borough, and which contributed to the cost of inspection, so greatly exceeded the actual cost of inspection as to warrant a finding that the charges were excessive and to justify the conclusion that the ordinance was unreasonable, the court commits error in charging that the borough authorities were the only tribunal that could decide the amount of the license." In Kittanning Borough *v.* American Natural Gas Co., 247 Pa. 65, it was held: "Whether an ordinance imposing a license tax be reasonable and consistent with the law is generally a question for the court. When the reasonableness of the ordinance turns upon the amount of a license charge, it may rightly be left to the determination of a jury as a mixed question of law and fact. *Prima facie,* an ordinance fixing an annual license charge upon a public service corporation for police supervision is presumed to be reasonable, but this is a presumption only which can always be rebutted by facts showing it to be unreasonable. It devolves upon the complaining company to show that the ordinance is not reasonable. When the reasonableness of a license charge under an ordinance is tried before a jury, the parties are entitled to a finding of the jury upon that question, unless the testimony is such as to compel a decision one way or the other, in which event the court may in a proper case direct a verdict. In an action by a borough to recover delinquent annual license fees charged against a natural gas company, where it was alleged that the charges were unreasonable, in that they were largely in excess of the actual cost of inspection, the case was necessarily for the jury, where there was evidence, although contradicted, tending to show the cost of inspection and from which the jury might have drawn the conclusion that the fees were not unreasonable." In Philadelphia *v.* Townsend, 231 Pa. 191, Mr. Justice Moschzisker said: "Conceding that such a tax must be limited to the cost of the improvement, it is for councils to say, considering the contract price and the other elements to which we have already adverted, what that cost will amount to and what the charge shall be. In other words, the fixing of the cost charge is committed to the discretion of councils. It may be that an abuse of discretion on the part of councils in fixing the charge would be reviewable by the courts: Pittsburgh Railways Co. *v.* Pittsburgh, 211 Pa. 479; Kittanning Borough *v.* Natural Gas Co., 26 Pa. Superior Ct. 355; Chambersburg Borough *v.* Chambersburg Gas Co., 38 Pa. Superior Ct. 311. But unless such a charge should be fixed at an obviously unreasonable figure,

the courts would not interfere or even receive evidence upon the point." The above authorities sufficiently point to the procedure and to the rules applicable to the present case on the subject of the amount of the license. If the bill had contained figures giving the sizes of the forty-four bill-boards, one could easily determine by mathematical calculation how much all these bill-boards would produce to the city, and if the figures which were stated upon the argument as to the revenue which these bill-boards produced to their owners were also incorporated in the bill, a chancellor might easily reach a conclusion as to the reasonableness of the license fee. The cost of inspection, if it were done once a week, cannot be large, and it would seem to us that council should materially lower the figure charged, if they are honest in their expressed intention of inspecting the bill-boards, and if they desire to avoid further litigation on that subject. The cost of inspection, when performed by the police, as provided for in section 9 of the ordinance, cannot be large, and an attempt to procure revenue beyond that cost will surely lead to litigation, which will result in confining the amount to the actual cost of inspection. It is for that reason that we have referred at length to the authorities. As the case now stands, we do not feel that we can declare the ordinance void on the ground that the charge has been "fixed at an obviously unreasonable figure." As a new ordinance will have to be drafted, this matter should receive careful and serious consideration. A number of other considerations were earnestly pressed upon us by the complainant, but, after examining them, we feel that they are without force.

And now, Feb. 13, 1922, this cause came on to be heard at this term, and, upon consideration thereof, it is ordered, adjudged and decreed that defendants' demurrer be overruled; and it is further ordered, adjudged and decreed that upon filing a bond in the sum of $500, with sufficient sureties, a preliminary injunction issue as prayed for, restraining the defendants, and each of them, their officers, agents, attorneys, employees and servants, from in any way interfering with, preventing the erection, repair or construction of, removing, damaging or destroying the bill-boards and signs of the complainant, and from attempting to enforce the provisions of the ordinance defining bill-boards, etc., referred to in the bill. (See, for form of order, Bryan *v.* City of Chester, 212 Pa. 259.)

From Henry D. Maxwell, Easton, Pa.